IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| THOMAS S. OLIVAS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-00385 |
| | § | |
| BOBBY LUMPKIN, Director | § | |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

Petitioner Thomas S. Olivas was convicted of Capital Murder—Multiple and was sentenced to life in prison by a Texas court. Olivas now challenges this conviction in his petition for habeas corpus relief. His petition should be denied and dismissed with prejudice because his claims are without merit.

## JURISDICTION

Olivas seeks habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254, which provides the Court with jurisdiction over the subject matter and the parties, as Olivas was convicted within this Court's jurisdiction.

## PETITIONER'S ALLEGATIONS

The Respondent (Director) understands Olivas to allege that:

1.    Olivas is actually innocent; and

2.    Olivas was deprived of due process by the admission of and reliance upon faulty evidence.

ECF 1 at 6.

## GENERAL DENIAL

The Director denies all of Olivas's assertions of fact except those supported by the record or specifically admitted herein.

## STATEMENT OF THE CASE

### I.   Procedural History

The Director has lawful custody of Olivas pursuant to the judgment and sentence of the 372nd District Court of Tarrant County, Texas, in cause number 1376698R, styled *The State of Texas v. Thomas Olivas*. SHCR-01 at 8–10.[1] Olivas was charged with Capital Murder—Multiple, entered a plea of not guilty, and was tried by a jury. *Id.* Olivas was found guilty and sentenced by the trial court to life in prison without parole on October 2, 2014. *Id.*

Olivas's conviction was affirmed by the Second Court of Appeals of Texas on December 30, 2016. *Olivas v. State*, No. 02-14-00412-CR, slip op. (Tex. App.—Ft. Worth 2016, pet. granted, judgm't vacated w.r.m.). The Texas Court of Criminal Appeals granted Olivas's petition for discretionary review, vacated the Court of Appeals' judgment, and remanded the case for reconsideration in light of the Supreme Court's holding in *Carpenter v. United States*, 138 S. Ct. 2206 (2018). *Olivas v. State*, PD-0561-17 (Tex. Crim. App. 2018).

Upon reconsideration, the Second Court of Appeals overruled the sole issue on remand and again affirmed the trial court's judgment. *Olivas v. State*, No. 02-14-00412-CR, slip op. (Tex. App.—Ft. Worth 2020, pet. ref'd.) Olivas's petition for discretionary review was refused on September 16, 2020. *Olivas v.*

---

[1] "SHCR-01" refers to the Clerk's Record of state habeas pleadings in *Ex parte Thomas Olivas*, No. 93,624-01 (Tex. Crim. App. 2022).

*State*, PD-0336-20 (Tex. Crim. App. 2020).

Olivas filed a state habeas writ application challenging the conviction on September 15, 2021. SHCR-01 at 12, 23–24. The application was denied without written order on the findings of the trial court without a hearing and on the court's independent review of the record on May 4, 2022.[2]

Olivas filed the instant petition for writ of habeas corpus on May 4, 2022. ECF 1.

## II.   Statement of the Facts

The Second Court of Appeals summarized the facts as follows:

On March 20, 2011, at approximately 10 p.m., authorities responded to a fire at an apartment complex in Arlington where the bodies of the decedents (mother and baby) were discovered. The mother died of multiple (eleven) stab wounds. The baby suffered a violent death, the testimony showing that gasoline had been poured on or around him as he lay in a crib. The fire started in the baby's room. When the flames became visible outside, a neighbor saw a lone individual wearing a hoodie leave through a breezeway which afforded easy access to and from the decedent's apartment. Gasoline also appeared on various portions of the mother's clothing, the baby's clothing, and areas throughout the apartment.

Appellant and the mother were not strangers; they had a personal history, albeit an abhorrent one. The evidence showed appellant had a prior dating relationship with the mother, that he was the father of the baby, and that he loathed both. Previously, the mother instituted legal proceedings against appellant regarding paternity and child support through the Attorney General's office. After receiving legal documents from the Attorney General's office which she did not understand, she wanted to discuss them with appellant. Although upset with mother over this legal matter and another relating to a breakup with his current girlfriend, appellant agreed.

---

[2] *Case Detail*, https://search.txcourts.gov/Case.aspx?cn=WR-93,624-01&coa=coscca (last visited July 12, 2022).

On March 20, appellant admittedly intended to meet with the mother and was present in the area of her apartment from late afternoon to about 10:00 p.m. Cell tower records reflecting cell communications between mother and appellant, as well as appellant's later statements, showed that he drove to Arlington in the area of her apartment. Appellant's statements and his text to mother indicated he did not know exactly where she lived. About 7:00 p.m., mother texted appellant that she would give him directions as soon as she got to her apartment. A few minutes later, the mother did call appellant, ostensibly to give appellant the promised directions to her apartment. It is patently unreasonable to entertain any other explanation for her call.

Statements by appellant and testimony of several witnesses confirmed that the vehicle appellant borrowed and drove on the night of the murders and days afterwards smelled of gasoline. In addition, on the night of the murders, appellant alerted the vehicle's owner that he had spilled gasoline in her vehicle.

*Olivas v. State*, No. 02-14-00412-CR, slip op. at 1–5 (Tex. App.—Ft. Worth 2016, pet. granted, judgm't vacated w.r.m.)

## STATE COURT RECORDS

Records of Olivas's trial, appeal, and relevant portions of his state habeas proceedings have been filed with the Court. The Director has not filed the entire state habeas record as it contains sealed documents and is not necessary to the disposition of this case.

## EXHAUSTION/LIMITATIONS/SUCCESSIVE PETITION

Olivas's petition is not subject to the successive petition bar, 28 U.S.C. § 2244(b). Olivas's petition is also not barred by AEDPA's limitations period. 28 U.S.C. § 2244(d). The Director believes that Olivas has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1).

## ANSWER

4

## I.   Olivas's Actual Innocence Claim Is Not Cognizable. (Claim 1)

Olivas contends that he is "actually innocent of capital murder" and that "newly discovered DNA evidence" proves it. ECF 1 at 6. According to Olivas, this "new evidence" is the fact that "none of Olivas's belongings tested positive for gas" and that "none of Olivas's DNA was discovered at the crime scene, but a third-party's DNA was found." *Id.* This claim is not cognizable, and further, is without merit.

This claim must be rejected because it does not raise a ground upon which federal habeas relief may be granted. According to the Supreme Court, claims of newly discovered evidence, casting doubt on the petitioner's guilt, are not cognizable in federal habeas corpus. *Herrera v. Collins*, 954 F.2d 1029, 1034 (5th Cir. 1992) (quoting *Townsend v. Sain*, 372 U.S. 293, 317 (1963), overruled on other grounds by *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 6 (1992)). On review of *Herrera*, the Supreme Court further stated:

> Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding . . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact.

*Herrera*, 506 U.S. 390, 400 (1993). Therefore, because claims of actual innocence fail to state a ground for federal habeas corpus relief, Olivas's actual innocence claim must be dismissed with prejudice. *Lucas v. Johnson*, 132 F.3d 1069, 1075-76 (5th Cir. 1998).

And, "even if a truly persuasive claim of actual innocence could be a basis for relief, the Supreme Court made clear that federal habeas relief would only

5

be available if there was no state procedure for making such a claim." *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003). Olivas had a state procedure for raising his actual innocence claim; therefore, this Court should not entertain them.

Finally, this allegedly "new" evidence is not actually newly discovered. The jury heard about hairs found on Mechelle's body and the minor presence of third-party DNA and heard that the hairs and the DNA could not be matched to Olivas. *See Olivas v. State*, No. 02-14-00412-CR, slip op. at 40, 58–59 (Tex. App.—Ft. Worth 2016, pet. granted, judgm't vacated w.r.m.).

Patricia Eddings, of the Tarrant County Medical Examiner's Officer, testified that the hairs recovered from Mechelle's body generally exhibited traits similar to her own hair but that they did not exhibit traits similar to Olivas. *Id.* at 40. Two of the hairs, however, did exhibit "some dissimilarities" to Mechelle and "might have come from someone else." *Id.* Those two hairs, according to Eddings, did not display "any similarities" to Olivas. *Id.* Eddings also said that she did not compare any hairs found on Mechelle's body to any other person other than Mechelle and Olivas. *Id.* It is undisputed that the evidence regarding the hairs found on Mechelle's body was admitted at trial, and the evidence showed that the hairs did not belong to Olivas. The state habeas court found that "[t]he evidence regarding the hairs found on Mechelle's body was admitted at trial." SHCR-01 at 81 (no. 9).

Connie Patton, the DNA technical leader for the Tarrant County Medical Examiner's Office, testified that some items did test positive for the mother's DNA and some items demonstrated a "minor" presence of another person's

DNA, but that due to the condition of the samples, the DNA could not be matched to Mechelle, baby Asher, Olivas, or Jopson (another individual who had a known sexual relationship with Mechelle). *See Olivas v. State*, No. 02-14-00412-CR, slip op. at 58–59 (Tex. App.—Ft. Worth 2016, pet. granted, judgm't vacated w.r.m.). Patton also said that she found the minor presence of male DNA that could not have come from baby Asher, Olivas, or Jopson. *Id.* It is undisputed that the existence of DNA from an unidentified male was admitted at trial, and therefore does not constitute "new" evidence.

With regards to the gasoline, testing samples from the inside of the Ford Explorer were negative for gasoline. *Id.* at 71. But numerous witnesses and Olivas himself all said that the vehicle contained a strong smell of gasoline. *Id.* This alleged "new evidence" was presented to the jury and it was the jury's province to resolve conflicting evidence, which it apparently did in favor of its verdict.

The state court found that "the hair, DNA, and fingernail cutting evidence was already admitted at trial" and "do not unquestionably establish [Olivas's] innocence." SHCR-01 at 82 (nos. 16, 17).

Thus, Olivas's purported new evidence is not actually newly discovered, and this court should not second-guess the jury's determination based on evidence that was presented at trial. *Dowthitt v. Johnson*, 230 F.3d 733, 742-43 (5th Cir. 2000), cert. denied, 532 U.S. 915, 149 L. Ed. 2d 156, 121 S. Ct. 1250 (2001). Accordingly, the state courts' determination that Olivas was not entitled to relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Claim 1 should be denied.

## II.   Olivas's Right to Due Process Was Not Violated (Claim 2)

Olivas contends that his due process rights were deprived by "faulty evidence submitted by the Ex-Deputy Medical Examiner and [relied] upon by the Ex-Chief Medical Examiner." ECF 1 at 6. According to Olivas, the autopsy was performed by Dr. Bao, but the State called Dr. Peerwani instead of Dr. Bao and, further, "[b]oth examiners have a history of providing false testimony." *Id.* This claim is without merit.

The Due Process Clause of the Fourteenth Amendment "forbids the State from knowingly using perjured testimony." *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000) (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972)). To be granted habeas relief on false testimony grounds, Olivas must show that "(1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false." *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997).

Olivas has not made this showing. Olivas has not alleged with any specificity what evidence or testimony is purportedly false or why. *See* ECF 1 at 6. Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue" and "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983)). Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v.*

*Heard*, 691 F.2d 796, 799 (5th Cir. 1982).

The state habeas court held that Olivas "failed to prove" that either Dr. Bao or Dr. Peerwani "provided faulty evidence." SHCR-01 at 87 (nos. 19, 20). Olivas has not shown that the denial of this claim was unreasonable under AEDPA. Ground 2 must be denied.

## CONCLUSION

For the above reasons, the Director requests that the petition be denied and dismissed with prejudice, and that no certificate of appealability issue.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division


s/ Willa Cockshutt
*Lead Counsel            WILLA COCKSHUTT\*
Assistant Attorney General
State Bar No. 24118354

P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 936-1400
(512) 936-1280 (FAX)
willa.cockshutt@oag.texas.gov

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that on August 3, 2022, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorney of record, who consented in writing to accept this Notice as service of the document by electronic means:

Aaron M. Diaz
Goldstein & Orr
310 S St Mary's St
Ste 2900
San Antonio, TX 78205
210-226-1463
adiazlaw1@gmail.com

John Stuart Gilmore, III

10

Goldstein & Orr
310 S St Mary's St
Ste 2900
San Antonio, TX 78205
210-226-1463
johnstuartgilmore@gmail.com

s/ Willa Cockshutt
WILLA COCKSHUTT
Assistant Attorney General

11