STATE V. THOMAS OLIVAS

1            REPORTER'S RECORD

2         VOLUME 3 OF 21 VOLUME(S)

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS
3/27/2015 12:36:05 PM
DEBRA SPISAK
Clerk

3      TRIAL COURT CAUSE NO. 1376898R

4    COURT OF APPEALS CASE NO. 02-14-00412-CR

5

6  THE STATE OF TEXAS          )  IN THE 372ND JUDICIAL
                               )
7                              )
                               )
8                              )
   VS.                         )  DISTRICT COURT
9                              )
                               )
10                             )
                               )
11                             )
   THOMAS OLIVAS               )  TARRANT COUNTY, TEXAS
12

13

14       * * * * * * * * * * * * * * * * * * * * * * * * * * * *

15          PRETRIAL HEARING CONTINUES

16       * * * * * * * * * * * * * * * * * * * * * * * * * * * *

17

18     On the 30th day of January, 2014, the following
   proceedings came on to be heard in the above-entitled
19 and numbered cause before the Honorable Scott Wisch,
   Presiding Judge, held in Fort Worth, Tarrant County,
20 Texas;
       Proceedings reported by computerized machine
21 shorthand with assisted realtime transcription.

22

23

       KAREN B. MARTINEZ, CERTIFIED SHORTHAND REPORTER
24           Official Court Reporter
           372nd Judicial District Court
25             Tarrant County, Texas

```
 1    APPEARANCES:

 2    ATTORNEYS FOR THE STATE:

 3        HONORABLE LORI L. BURKS
          SBOT NO:  24013673
 4        HONORABLE R. KEVIN ROUSSEAU
          SBOT NO: 17324950
 5        HONORABLE TAMLA S. RAY
          SBOT NO: 24046687
 6        Assistant Criminal District Attorneys
          Tim Curry Criminal Justice Center
 7        Fort Worth Texas  76196
          Phone: 817-884-1400
 8        Fax:   817-884-3333

 9    ATTORNEYS FOR THE DEFENDANT:

10        HONORABLE TIM MOORE
          SBOT NO: 14378300
11        Attorney at Law
          115 West 2nd Street, Suite 202
12        Fort Worth, Texas  76102
          Phone: 817-332-3822
13        Fax:   817-332-2768

14            - AND -

15        HONORABLE JOETTA L. KEENE
          SBOT NO: 11165800
16        Attorney at Law
          204 South Mesquite Street
17        Arlington, Texas  76010
          Phone: 817-275-6611
18        Fax:   817-275-6621

19

20

21

22

23

24

25
```

STATE v. THOMAS OLIVAS

```
 1                    CHRONOLOGICAL INDEX

 2                      Volume 3 of 21

 3                  PRETRIAL HEARING CONTINUES

 4    January 30, 2014                         Page  Vol.
```

```
 5    The Court Calls Case for Trial...............   4    3

 6    Defense First Amended Motion to Suppress
      Evidence.....................................   4    3
 7
      Defendant's Closing Argument by Mr. Moore.....   6    3
 8
      State's Closing Argument by Ms. Burks.........  14    3
 9
      Court's Ruling................................  21    3
10
      Other Defense Motions and Rulings.............  31    3
11
      Pretrial Hearing Concluded....................  45    3
12
      Court Reporter's Certificate..................  46    3
13
```

```
14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S
2             Thursday, January 30, 2014   10:00 a.m.
3                (OPEN COURT, DEFENDANT PRESENT)
4             THE COURT:  We're going to continue with
5    pretrial hearings on the State of Texas versus Thomas
6    Olivas, 1352014R, as in Romeo, the reindictment of
7    1298688D, for purposes of this next-day hearing.  There
8    are motions, notices, legal documents filed on behalf of
9    both parties in both cause numbers.  The "R" case number
10   is the one that will be tried, but both records will be
11   maintained for purposes of litigation and, if necessary,
12   any subsequent appeal.
13             Are both sides ready to resume, State?
14             MR. ROUSSEAU:  Yes, Your Honor.
15             THE COURT:  Defense?
16             MR. MOORE:  We're ready.
17             THE COURT:  All right.  The next motion I've
18   been asked to address is Defense First Amended Motion to
19   Suppress Evidence, file-marked January 29th, which is
20   basically a motion to quash two separate batches of
21   data, to speak loosely, one relating to cell phone
22   number records and one related, loosely speaking, to
23   tower location records, and there are two different
24   orders signed by two different judges.  And I've been
25   advised that the motion speaks for itself, this is a
```

1   question of law and it only needs to be argued, but

2   there are no facts or evidence to be offered other than

3   for the Court to take judicial notice of the contents of

4   the Defense motion that these are the orders that were

5   in the case and we want to quash any records obtained as

6   a result of either or both orders.

7            Is that accurate?

8            MR. MOORE:  That's accurate, Judge.

9            THE COURT:  And does the State concede and

10   agree for the Court to take notice that the application

11   and orders, one signed by Judge Westfall and one signed

12   by Judge Gallagher, that are attached to the Defense

13   motion are the orders in issue in this cause?

14            MR. ROUSSEAU:  Your Honor, I believe so, but

15   I'm going to let Ms. Burks speak for me on this topic.

16   She's a lot more well-versed on the topic than I am, so

17   she's going to take over from this point in this

18   hearing.

19            THE COURT:  All I was asking you, as lead

20   counsel and the person who's trying the case, to not put

21   Ms. Burks in a position, and I'm sure she knows, but

22   there are two orders that are attached to seek records.

23            MR. ROUSSEAU:  Yes.

24            THE COURT:  And you agree the orders

25   attached to the Defense motions are the orders that

 1   they're trying to have the evidence suppressed, they

 2   don't have to a file an exhibit with the court reporter.

 3            MR. ROUSSEAU:  Yes, that's fine, Judge.

 4            THE COURT:  Yeah, that's all I wanted to

 5   check with you, Kevin.

 6            All right.  And with that, since it's just

 7   argument...

 8            Off the record.

 9            (Discussion off the record)

10            <u>DEFENDANT'S CLOSING ARGUMENT</u>

11            MR. MOORE:  Just to clarify the record, I

12   actually, to obtain these orders that are attached to

13   the first amended motion to suppress, had Judge

14   Gallagher, who signed one of the orders, and Judge

15   Westfall, who signed the other, actually signed a motion

16   to unseal them.  These were both sealed and in the

17   District Clerk's possession, so I had them sign the

18   motion and order to unseal them and that's how they came

19   into being, or came to be attached to this.

20            And, basically, what we're talking about is

21   cell tower locations, cell phone records, not

22   necessarily content of cell phone records, such as text

23   messages and voice messages, things of that nature, but

24   the cell tower location.  When you make a phone call or

25   you text with your cell phone, which every one of us in

1    this room have nowadays, there's a tower that tells an

2    area that you're in and it can trace you from location

3    to location.

4              And what happened in this particular case is

5    the District Attorney's Office, through Assistant

6    District Attorney Tracey Kapsidelis, prepared an

7    application pursuant to 18 U.S.C. Section 27.03 and

8    18.21 of the Code of Criminal Procedure.

9              THE COURT:  That probably would be Section

10   5?

11             MR. MOORE:  I'm sorry?

12             THE COURT:  Would that be Section 5?

13             MR. MOORE:  Section 5.

14             THE COURT:  Request For Stored Information?

15             MR. MOORE:  Correct.

16             THE COURT:  All right.  Go ahead.

17             MR. MOORE:  Correct.

18             And instead of getting a search warrant,

19   they obtained these records pursuant to this order on

20   two different occasions.

21             Our argument, Judge, is that we certainly --

22   and I know some courts have held otherwise, but --

23             THE COURT:  Courts like where?

24             MR. MOORE:  Like the Fifth Circuit.

25             THE COURT:  Okay.  Thank you for your

1      candor.

2              MR. MOORE:  The Fifth Circuit has held

3      basically that cell tower locations, people do not have

4      an expectation of privacy when they are making telephone

5      calls out there being traced with these cell phone

6      towers and, therefore, law enforcement does not need to

7      get a search warrant based on probable cause.

8              Our argument is just the opposite, that --

9      and certainly this Court can look to the law of other

10     jurisdictions in deciding this issue.  I've brought you

11     a case, and I've provided them a case, from the New

12     Jersey Supreme Court, a recent case, cited the State

13     versus Thomas W. Earls -- I'll give you a copy -- in

14     which the New Jersey Supreme Court held that there is an

15     expectation of privacy in the cell tower locations, and

16     it lists -- and I won't go over all the reasons.  You

17     can read that case.  It's a very well-reasoned opinion

18     and points out why in our everyday world now, in our

19     electronically controlled world, why people should have

20     an expectation of privacy in their whereabouts.

21             THE COURT:  And just to make a legal point,

22     from reading the summary, they take the position that

23     the New Jersey Constitution provides more protection

24     than the Fourth Amendment.

25             MR. MOORE:  And that's exactly right.  And

1  our argument is that the Texas Constitution, Article 1,

2  Section 9, provides more protection, going back to

3  Heitman versus State, than the United States

4  Constitution.  And when you look at the Heitman

5  decision -- and there's actually a case of Damon Jerome

6  Richardson versus State, 865 S.W.2d 944, Court of

7  Criminal Appeals decision.  They address the issue of a

8  PIN register, of getting telephone numbers that are

9  dialed, and indicated the people have an expectation of

10  privacy in those.  And I would kind of compare that to

11  your cell phone tower locations.

12         THE COURT:  Well, and let me just say this.

13  As I understand a PIN register, it's we want to start

14  recording who they call, not ask for the records of who

15  they've already called.  The PIN register is to place

16  something to monitor future conduct, not --

17         MR. MOORE:  That's correct.

18         THE COURT:  -- see what else that they had

19  done and possibly bill for it on an itemized bill that

20  says you called all these places.  That's already in

21  possession of the vendor who provides the phone service.

22         MR. MOORE:  And you're right and -- but I

23  think the real comparison is this.  The Fifth Circuit

24  has found that these are mere business records, that

25  there is no expectation of privacy.  They're business

```
 1   records because they're just gathering records for
 2   billing purposes and that sort of thing, but when you
 3   consider...
 4              THE COURT:  Hold on.  Hold on.  Based on
 5   that last thing you said, are you still urging both
 6   parts of your motion, as to the who's-been-called
 7   numbers, records and the location records, or are you
 8   only challenging the location records?
 9              MR. MOORE:  Both.
10              THE COURT:  Okay.
11              MR. MOORE:  Both.
12              THE COURT:  You're just understanding the
13   logic on the billing records versus the tower records.
14              MR. MOORE:  Well, I mean, they're both
15   really for billing purposes, or for analysis, that's
16   what they're for.
17              THE COURT:  And, I guess from my position,
18   one of the things, the way I've scanned through these
19   orders, is here's the phone number and we want all the
20   numbers they've called, we want a list of who they
21   dialed and who dialed them.  Are there any text messages
22   that were seized as part of this or is it just phone
23   numbers?
24              MR. MOORE:  Just phone.
25              THE COURT:  Okay.  So that's the same type
```

STATE v. THOMAS OLIVAS

```
 1   thing that might be on a typical cell phone bill, if you
 2   have an itemized bill.  What tower you call from, all
 3   that information, that is not on a typical cell --
 4              MR. MOORE:  I'm sorry?
 5              THE COURT:  Where you called from, what
 6   tower you bounced your signal off of or how many towers,
 7   your location was not part of a typical cell phone bill
 8   or business record, even though it's electronically
 9   maintained based upon the operation of how cell phones
10   work.
11              MR. MOORE:  You're right.
12              THE COURT:  So but you're challenging both
13   under the state constitution.  Because it sounded like
14   you almost conceded the phone bill part versus the
15   location part, but you did not so --
16              MR. MOORE:  No, no.
17              THE COURT:  Okay.  All right.  That's fine.
18              Still carried as to both issues.
19              You may continue.
20              MR. MOORE:  Okay.  Where were we?
21              THE COURT:  You were talking about towers
22   and phone bills and --
23              MR. MOORE:  Well, I just think the bottom
24   line is, Judge, that people have an expectation of
25   privacy in where they are.  You know, where you go after
```

1   work, where you visit, what church you visit, what

2   establishments you visit, you have an expectation of

3   privacy in that, and, therefore, if you have an

4   expectation of privacy, Article 1, Section 9 of the

5   Texas Constitution requires that a search warrant be

6   obtained to gather this information, and then basically

7   we're asking you to recognize that.

8           There's another part of our -- second part

9   of the motion that I've addressed, the sufficiency of

10  the application that Assistant DA Kapsidelis prepared

11  and presented to Judge Gallagher and Judge Westfall.  If

12  you look at -- at 18 U.S.C. 27.03(d), it provides that

13  "a court order for disclosure under (b) or (c) may be

14  issued by any court that is a court of competent

15  jurisdiction and shall issue only if the governmental

16  entity offers specific and articulable facts showing

17  that there are reasonable grounds to believe that the

18  contents of a wire or electric communication, or the

19  records or other information sought, are relevant and

20  material to an ongoing criminal investigation."

21          And our position is that those -- if you

22  read those applications attached, Exhibit C and Exhibit

23  A, that they failed -- kind of a comparison to an arrest

24  warrant or a search warrant affidavit, that they failed

25  to establish any facts that show that they would be

1    relevant and material to an ongoing criminal

2    investigation.  And, therefore, we'd ask you to suppress

3    those cell phone records that were obtained and not

4    allow the State to use them in trial.

5            THE COURT:  All right.  I understand your

6    factual and your legal position.  Give me just a second.

7            (Pause in proceedings)

8            THE COURT:  On the record.

9            I have reviewed the New Jersey Supreme Court

10   case, its rationale and, quite frankly, a very succinct

11   and understandable summary of how electronic devices of

12   various types work and how the information is obtained,

13   and, basically, concluding with the fact that it is new

14   law in New Jersey that a warrant is required based on

15   the state constitution, which grants more protection

16   than the Fourth Amendment, notwithstanding their

17   statute, which I am going to assume tracks the federal

18   statute you cited, as does the Texas statute in Article

19   18.21, Section 5, and that you're telling me that I

20   should find, first and foremost, that the Texas

21   Constitution offers more protection than the Fourth

22   Amendment and that a warrant should be required, and,

23   number two, in the alternative that their application

24   wasn't sufficient under the statute to justify a court

25   releasing this information.

```
 1                Are those your two legal positions?

 2                MR. MOORE:  That's correct.

 3                THE COURT:  All right.  I'm on the same

 4    page.

 5                The State may respond.

 6                MS. BURKS:  Your Honor, am I understanding

 7    that the Defense is waiving their argument that the U.S.

 8    Constitution should require a warrant, as well?

 9                MR. MOORE:  No, I'm not waiving that.

10                THE COURT:  Well, you're acknowledging that

11    the Fifth Circuit has ruled against you on that.

12                MR. MOORE:  That's correct.

13                THE COURT:  If the Supreme Court changes

14    their mind, you still assert it but understand that this

15    court is probably bound by Fifth Circuit law, but you

16    still want to make that objection in case the Supreme

17    Court changes its mind?

18                MR. MOORE:  Exactly.

19                THE COURT:  I gotcha.

20                All right.  With that understanding, you may

21    proceed.

22                MS. BURKS:  Thank you, Judge.

23                     STATE'S CLOSING ARGUMENT

24                MS. BURKS:  The first thing I would like to

25    address is the issue of warrant requirement.
```

STATE v. THOMAS OLIVAS

1           The Fifth Circuit did address this issue.
2   Based upon a Southern District of Texas opinion, which
3   they went through all the hearings that had occurred on
4   Capitol Hill regarding the Electronic Communications
5   Privacy Act, and they included very specific findings of
6   the fact regarding how the technology has changed, how
7   it works, how the very same arguments about how you can
8   be pinpointed with your phone, and the Fifth Circuit did
9   offer its opinion, which I will give to the Court and to
10  the Defense, finding that the United States Constitution
11  does not protect those records.
12           They found it based upon three different, I
13  guess, portions of reasoning.  First of all, that the
14  person who's creating the record, using the phone,
15  voluntarily contracted with a cell phone company and
16  gave them information which they stored.  This is a
17  third party, not a governmental entity.  And that when
18  one uses a cell phone we know that we are creating
19  records.  And specifically in this case, Mr. Olivas, in
20  his interview with the detective, and this is Pretrial
21  Exhibit 2-A, page five, acknowledges when he says, the
22  question, "And you know that we can track your phone in
23  that general area?  You know that?  Are you aware of
24  that," he says, Yes, sir."  So he does know his phone is
25  creating these records.  So it is a voluntarily made

```
 1   record.

 2              Secondly, that these records were already in

 3   possession.  The Government is not requiring AT&T or

 4   T-Mobile or any of these companies to create these

 5   records.  They were already being created.  And in this

 6   case, this is only historical information.  And I would

 7   point out that the New Jersey court is addressing the

 8   issue, of they are calling up and actually getting

 9   real-time information.  So it's a different issue.

10              And then thirdly, that they have the right

11   to possess and access the information.  And it's based

12   on these three factors that the Fifth Circuit concludes

13   that these are business records.  And that is true in

14   this case.

15              That law has been applied in Texas, the fact

16   that this argument has been made already in Texas.

17   There's two opinions that I found one.  One of them is

18   published and one of them is not.  The published opinion

19   is out of Houston.  It is Barfield v. State, 2013 WL

20   5861504.

21              THE COURT:  Fourteenth.  Fourteenth Court of

22   Appeals, all right, go ahead.

23              MS. BURKS:  I'm sorry.  Yes, the 14th.

24              THE COURT:  Okay.

25              MS. BURKS:  And then the second one is out
```

1    of Dallas.  It is 2013 WL 1819979, in which the Defense

2    argued that there must be a warrant obtained in order to

3    get historical cell site data.  In both of those cases

4    they followed the Fifth Circuit.  There was no extra

5    protection granted because of the Texas Constitution,

6    and they rightly decide historical cell site data may be

7    obtained by this court order, the same type of court

8    order under 18.21, Section 5.  That was obtained in this

9    particular case, as well.

10              So, Your Honor, we would urge the Court to

11    deny the Defendant's request that the Court find that

12    the Texas Constitution provides more protection.  And we

13    ask that the Court follow the Fifth Circuit's

14    interpretation of the United States Constitution in that

15    it does not require a warrant to obtain historical cell

16    site data.

17              As to the Defense's argument that these

18    orders are insufficient, the standard that is required

19    under 18.21 and under the Electronic Communications

20    Privacy Act is that these orders contain -- or the

21    applications for these orders contain reasonable --

22    excuse me -- specific and articulable facts providing a

23    reasonable belief that this material will be -- that it

24    will be material to an ongoing investigation.

25              In these orders they clearly stated that a

1   victim was found in her burning apartment, that she was

2   deceased, rescue efforts had commenced, they found her,

3   she was deceased in her burning apartment -- in her

4   apartment, and that she was found to appear to have

5   several stab wounds -- this is indicative of a crime,

6   Your Honor, obviously a murder -- and that their

7   information that they gathered from her mother was that,

8   you know, who could have done this, who was mad at her,

9   well, she says, "Well, they've got a paternity suit

10  going with the potential father of her child," and that

11  that is the basis she believed of what had occurred to

12  her daughter.  And they also found that his phone

13  number -- they went and talk to him, Mr. Olivas, this

14  defendant, who was the other party in that SAPCR

15  lawsuit, and that, first of all, the morning of March

16  21st, 2011, they were unable to find him, which is the

17  day after the victim was found in her apartment dead.

18  They were unable to find him.  Eventually they did find

19  him and they interviewed him.  And he gives them the

20  story that he was going to go meet with her but didn't.

21  And all of that is pretty much articulated in these --

22  both of these orders.

23          THE COURT:  And I do note that he'd actually

24  been in contact with her on that evening.

25          MS. BURKS:  And that it says he contacted

1  her, exactly, Your Honor.

2           THE COURT:  It doesn't say he called her,

3  but it does say contact.

4           MS. BURKS:  Contact.

5           And so, Your Honor, the level of standard

6  is, is not comparable to an arrest warrant.  It's not

7  comparable to a search warrant.  This standard is a

8  lower standard.  And in this court in 2007, you actually

9  decided, on the Martinez case, this very same standard.

10 And it was a drug case and somebody was walking out with

11 a bag that had something heavy in it and that's all that

12 was there.  That bag with something heavy in it was

13 enough to say that's specific and articulable facts.

14 This case far exceeds that standard.  And so -- and that

15 case was actually affirmed by the Fort Worth Court of

16 Appeals, just, I can quote it for you, 236 S.W.3d 361,

17 Martinez v. State, and I have copies of that if you want

18 it, but you decided it at the time.

19          And so, Your Honor, the State would urge you

20 to deny the Defense's motion based upon their statements

21 that these are insufficient court orders, as well --

22 applications.  Thank you.

23          THE COURT:  Thank you, Lori.

24          Under the theory "your motion, your burden"

25 in the face of law, you wanting to change the law, do

STATE v. THOMAS OLIVAS

```
1    you have any response?  You want the last word?  Are you
2    satisfied with what you've said?
3              MR. MOORE:  She correctly recited what the
4    Fifth Circuit decided, Judge.
5              THE COURT:  Okay.  Thanks for pointing out
6    this Court has apparently made wise and sound judicial
7    decisions in the past on drug cases, and
8    understanding --
9              MR. MOORE:  I think you have, too, Judge.
10             THE COURT:  Yeah.  I appreciate that.
11             -- but the real issue here is probably much
12   narrower and, quite frankly, it is a different issue.
13   I'm going to address the sufficiency issue first.  The
14   standard is not that you believe the person whose phone
15   records you want has committed a crime.  The standard is
16   it relevant to an ongoing investigation.  And simply
17   based upon the evidence before me, and I'm not going
18   outside the four corners of the application, but just as
19   a matter of common sense, an investigation is sometimes
20   to convict and sometimes to clear people and to narrow
21   the focus of who should be or is a suspect, when you
22   have a dead body, limited information and you go to all
23   sources and all leads.  Pursuing a lead is relevant to
24   an investigation, is material to an investigation.  It's
25   not the standards of we believe this person used this
```

1    phone to conduct drug transactions or to hire a hit man

2    or to commit another crime.  The bar that has to be

3    crossed is this isn't some cop or other person wanting

4    the records of his ex-wife to figure out who she's

5    dating or whether he should have to pay child support.

6    It's not the misuse of information by law enforcement

7    authorities for personal or otherwise.  It has to be

8    relevant and material to an investigation.  It doesn't

9    have to be aimed at a target of an investigation.  It

10    might be to provide corroboration, that a witness's

11    story is true or false, based upon did they make the

12    calls to corroborate they did talk to someone at a

13    particular day in time or to show that they were or were

14    not in a different area, to provide an alibi or to rebut

15    an alibi or just a story from a person who's absolutely

16    not a suspect who's trying to help or hurt one side or

17    the other in a criminal dispute.

18          So based upon that standard, the Court finds

19    as a matter of fact, concludes as a matter of law that

20    the language articulated in each of these applications,

21    which appear to be identical, is legally sufficient to

22    set out that the phone number and its use, reading a

23    totality of it -- and I concede talked on the phone

24    would be better -- but his location, having discussed

25    arrangements to meet but not meeting, locating this

STATE v. THOMAS OLIVAS

1   person is a legitimate need or their whereabouts at the

2   time of an alleged offense is a legitimate purpose of a

3   criminal investigation, whether that information were to

4   help convict or help clear that person.

5            So your grounds of sufficiency is overruled

6   based on the lower and different standard for obtaining

7   information versus to arrest a person suspected of a

8   crime.  It's not a probable cause standard and I will

9   not raise it to that level on that sufficiency basis.

10           On a separate and distinct issue of is a

11   warrant required to obtain this information, that the

12   application process is constitutionally infirm because

13   it infringes upon a citizen in Texas, in particular,

14   their reasonable expectation of privacy in the

15   electronic age, I will say with all the publicity, all

16   the issues concerning the NSAA, the war on terror, who's

17   spying on who, plays what video games, it's a legitimate

18   public policy concern that ought to be raised and looked

19   at in a free society, by lawyers on either side of the

20   courtroom, by citizens at large.

21           What can be done with a phone, the New

22   Jersey court correctly addressed this is the real world,

23   and Lori's point is totally accurate, I choose to sign

24   up with this company, the Fifth Circuit recognizes that,

25   I enter a contract and in all the fine print no one ever

1    reads probably said we're keeping all this stuff and

2    we'll cooperate with the Government and we'll pay taxes,

3    and we sign that like we do on a car loan or anything

4    else.  But the reality is, you have to have a car to get

5    to work in Texas and most people have to have a cell

6    phone to function in their job and in their life.  So

7    the New Jersey court says it's not really a voluntarily

8    third-party transaction, because the reality in today's

9    world is you can't survive without it, and that is a

10   legitimate observation and maybe a legitimate concern on

11   the part of all citizens as our technology evolves, and

12   as the data from our credit cards might be stolen from

13   some former Soviet Republic when we stop at Target,

14   those are concerns that need to be addressed.  But in

15   this specific point, this specific issue, the nature of

16   what's available, the knowledge of what's available --

17   off the record.

18            (Discussion off the record)

19            THE COURT:  As a matter of fact and law -- I

20   will not override the Fifth Circuit on what protections

21   are afforded by the U.S. Constitution.  So as a matter

22   of fact and law, I find that the state statutory scheme

23   in Article 18.21, Section 5, as applied in this case, is

24   not violative of the United States Constitution.

25            Based upon the rulings of the Court of

```
 1   Appeals, I do not find as a matter of fact and law that
 2   this process is violative of Article 1, Section 9 of the
 3   state constitution, and understand the Defense
 4   strenuously believes otherwise and this adverse ruling
 5   preserves this issue for the Court of Criminal Appeals
 6   to ultimately resolve.
 7                    Third, based upon the interview, the six
 8   hours plus of which I observed, and the written consent
 9   to search, I am not so sure he didn't waive any privacy
10   interests based upon his statements and the logical
11   implication of those statements when it was described
12   what's done with cell phones and other information.  So
13   even if Article 1, Section 9 of the state constitution
14   does give greater protection, based on the specific
15   facts of this case, it is my opinion, in the totality of
16   his interviews and statements "I have nothing to hide"
17   "get what you want" "we can do this" "that will be
18   great" "the sooner the better" -- that's paraphrased --
19   your client from the get-go professed his innocence and
20   uninvolvement in the death of the paramour or the child
21   and repeatedly offered any assistance and opportunity to
22   help solve this crime and bring the real killer to
23   justice, and he signed it in writing and he verbally
24   repeated throughout his interviews.  And I believe even
25   if Article 1, Section 9 turns out in hindsight,
```

 1    notwithstanding the Court of Appeals decisions, that the

 2    Court of Criminal Appeals determines the Texas

 3    Constitution gives better protection, I think verbally

 4    and in writing he waived that right to privacy in what

 5    appeared to be a sincere and clear effort, if to either

 6    cooperate or give the impression that he wanted to,

 7    that's what trials are for.

 8                    MR. MOORE:  Can I interrupt you?

 9                    THE COURT:  Yeah.

10                    MR. MOORE:  Does that mean, and in your

11    ruling, that because he said, "I'll help in any way I

12    can," this is effectively a consent to "go get my cell

13    phone records"?

14                    THE COURT:  No.  My position, Tim, is not

15    any one thing did that.  The consent to search, to

16    search the phone, they told him they're trying to get

17    the numbers, the information they told him, the

18    information that's available through the phone, and in

19    the context of the whole conversation I believe that's

20    the common-sense interpretation, not one limited item.

21                    Yeah, can you look at my phone, can I do

22    this, fine, but to go through the process of the consent

23    to search in an ongoing interview where information was

24    explained on the type of information that's available, I

25    think in the totality context of this case that that

1    very well could be a waiver, not one thing, but hours of

2    different comments, written waivers, the whole big

3    picture, a one-time "can we do this?"

4         "Yes.  Fine," no conversation, no

5    explanation, I would not reach that conclusion.

6         And in all fairness, that's just an

7    appellate attorney assuming arguendo that the state

8    constitution does give greater protection.  In this case

9    that protection appears to have been waived, but that's

10   not a universal ruling.

11        My preliminary ruling is motion denied.

12   Fourth Amendment does not protect against this -- well,

13   back up.  Rewind.

14        Motion denied.  Sufficiency of the

15   applications for the relevance or materiality to an

16   investigation challenge is denied based on fact and law

17   recited.  Number two, challenge to the application

18   infirm or not in the application and the order that was

19   a result thereof in each of these two instances, denied

20   on the basis that it violates the Fourth Amendment of

21   U.S. Constitution.  Item three, same reasoning, same

22   issues, motion to suppress denied as to each application

23   and the data obtained therefrom, that it violates

24   Article 1, Section 10 of the U.S. Constitution.  And

25   so -- I mean Article 1, Section 9 of the Texas

STATE v. THOMAS OLIVAS

1   Constitution.  And item four, even arguendo if wrong on

2   items two and three, or one, the consent to search and

3   the verbal acknowledgments throughout the interview seem

4   to imply, clearly, reasonably imply, a waiver and an

5   agreement to cooperate under the specific facts of this

6   case.

7          If I'm wrong on one through three, four as a

8   matter of fact and law -- my impression was a person who

9   is sincerely or manipulatively trying to get to the

10   bottom of what happened to my child to get them self

11   cleared and to get on with their lives so the real

12   murderer can be caught.  And in all fairness, I have

13   heard no facts.  The umpire doesn't take sides.  And

14   either a deception or a sincere plea of innocence could

15   be true, and that's what the jury decides.

16          But based upon his black-and-white, in the

17   reading of the transcript or his face, his expressions

18   in the black and white of the consent to search, there

19   was a person there saying, "Whatever I need to do to

20   solve who killed my son..." and in the context of this

21   case, phone records, locations, what we can track, he

22   didn't withdraw the search of the phone.  It was

23   explained about "we can find out where you were."

24          "That's fine."  There wasn't any "oops, I

25   shouldn't -- I need to back off her."  "I need to lawyer

1  up."  "I need to do anything else."  It was nonstop

2  "what can I do to help," and I believe waiver is

3  implied, clearly.  I don't think we'll get to there.  I

4  don't think that will matter.  I don't think we'll get

5  there, but if the Court of Criminal Appeals says the

6  state constitution says warrant, then that consent issue

7  is something that might come up, and those are my

8  factual observations related to that.

9          MR. MOORE:  Thank you.

10          THE COURT:  So any evidence admitted as a

11  result of either of the two orders that are attached to

12  the Defendant's motion to suppress, which is the subject

13  of this hearing, be they who called who, be they cell

14  tower locations, the motion to suppress is denied.

15          Do you want a running objection to the

16  admissible of any that information -- admissibility of

17  any of that information?

18          MR. MOORE:  Yes, we do.

19          THE COURT:  That will be granted.  And if in

20  doubt, when it's offered at trial, "I renew my pretrial

21  objections."

22          "Reconsidered in light of the record," and

23  either, "sustained," or "overruled," depending on what

24  the record is at the time they're offered.

25          MR. MOORE:  So if I say, "Judge," when these

1  records are offered, "we object based on our previous

2  hearing," you'll know what I'm talking about?

3            THE COURT:  "Based on the pretrial

4  hearings," yes, I will know we are talking about this

5  specific motion.

6            The State concedes that, as well; is that

7  correct?

8            MR. ROUSSEAU:  Yes, sir.

9            THE COURT:  All right.  Anything else on

10  that issue?

11            MR. MOORE:  No, sir.

12            MR. ROUSSEAU:  No, sir.

13            THE COURT:  Off the record.

14            (Discussion off the record)

15            THE COURT:  On the record.

16            There have been numerous other motions and

17  notices filed in these causes throughout the pendency of

18  this case, or these cases, technically.  The parties

19  have continually advised me that they continue to share

20  information, to communicate.  I think that was made

21  evident earlier in the week based upon the revelation of

22  the crime scene evidence that hadn't been analyzed due

23  to the retirement of one of the trace analysts at the

24  Medical Examiner's Office.  And I've appreciated that.

25  It's the Tarrant County way.  I think it's, in the

1    justice system, the way it needs to work.

2              There are numerous filings, answers and

3    notices that have actually been filed in the records of

4    the Court's cause in response to either formal or

5    informal requests.  I know the State has maintained an

6    open-file policy independent of the Michael Morton Act

7    and the Defense has access to electronic documents

8    contained in the State's file, including, but not

9    limited to, police reports, statements and other

10   matters.  But if there's anything either side wishes to

11   a make record of for purposes of discovery or otherwise,

12   or motions that haven't already been directly addressed,

13   this is your opportunity to do so, and if I need to make

14   formal rulings, I will.  If you simply need to put

15   notice in the record of what's going on, that's fine.

16             Who wants to go first?

17             MS. KEENE:  Judge, we filed a number of

18   pretrial motions last year, and I know the State has

19   copies of those.  We've agreed on most of those.  And it

20   might be easier, since they're my motions, for the State

21   to go through and say if they agree or if there's issues

22   or where we are on those, since it would be them

23   agreeing or not agreeing.

24             THE COURT:  That will be fine.

25             Kevin, are you agreeable with that

1    procedure?

2                MR. ROUSSEAU:  Yes, Your Honor.

3                THE COURT:  All right.  Then if you'll

4    identify the specific motion and the file-mark date and,

5    that way, I'll know I have a copy of it and know what

6    you're talking about.

7                MR. ROUSSEAU:  Okay.  I'm assuming, Your

8    Honor, that the motions that I have are in the same

9    order as they appear in the file, but, unfortunately,

10   the copy I have is not file-marked so --

11               THE COURT:  Okay.  Well, then just call out

12   the name and then I'll find it and I'll give you a

13   thumbs-up when I'm looking at it.

14               MR. ROUSSEAU:  Okay.  It is in the old cause

15   number, 1298688D, and it's Motion for Production of

16   Evidence Favorable to the Accused.  And we have -- I

17   have no objection to one, no objection to two, no

18   objection to three, except about 3(D), it asks for the

19   names and addresses of all the persons interviewed by

20   the State in connection with this case, of who the State

21   does not intend to call as witnesses in this case.  To

22   the extent that that gets into my work product, I

23   object.  However, I have complied and will continue to

24   comply if any people meeting that description supply us

25   with anything that's Brady or related to Brady in its

1    progeny in any way, I will give that up as I have.

2    That's the only objection I have to anything.

3              MS. KEENE:  And, Judge, we're not entitled

4    to require them to give us the names of all the

5    witnesses under this present statute, so I understand

6    that and agree with his objection.

7              THE COURT:  Okay.

8              MS. KEENE:  And obviously Brady material...

9              THE COURT:  I mean, Brady overrides work

10   product, but he's acknowledged that.

11             MS. KEENE:  Correct.

12             THE COURT:  Off the record.

13             (Discussion off the record)

14             THE COURT:  All right.  Then as to

15   Defendant's Motion for Production of Evidence Favorable

16   to the Accused, and it says filed November 4th, 2013,

17   the motion is granted as to -- within the limitations

18   requested by the State concerning work product that

19   wasn't Brady.

20             And you accept that ruling?

21             MS. KEENE:  We do, Judge.

22             THE COURT:  All right.  Next.

23             MR. ROUSSEAU:  Motion for Discovery.  And,

24   Your Honor, several times you may hear -- I'm going to

25   refer to "Brady information" or "Brady materials".  I

```
 1   want it understood that it's covering everything, Brady
 2   in its progeny, basically impeaching evidence --
 3              THE COURT:  Mitigation.
 4              MR. ROUSSEAU:  -- exculpatory evidence, all
 5   of the above.
 6              THE COURT:  Right.
 7              MR. ROUSSEAU:  Motion for Discovery No. 1,
 8   it's exactly the same objection I had previously.  I'll
 9   give up anything if it's Brady related, but other than
10   that, I think it's probably -- as it relates to the
11   Office of the Tarrant County District Attorney, I
12   believe it's a violation of work product, but everything
13   else, they already have an opportunity to give that up.
14              THE COURT:  Any objection to that?
15              MS. KEENE:  No objection to that, Judge.
16              THE COURT:  All right.  Granted with that
17   understanding.
18              MR. ROUSSEAU:  No objection to two.  No
19   objection to three.
20              THE COURT:  Granted to both.
21              MR. ROUSSEAU:  As to four, name, address and
22   telephone number of any person the State knows to have
23   been present at the time and place of the alleged
24   offense, I have provided all of that, with the exception
25   of the addresses and telephone numbers to the extent
```

1    that I have them, and I will continue to cooperate with

2    Ms. Keene and Mr. Moore.  If they need any help locating

3    somebody, if I can help them, I will do that.

4              THE COURT:  All right.  Then granted within

5    those parameters.

6              MR. ROUSSEAU:  Number five, no objection.

7              THE COURT:  Granted.

8              MR. ROUSSEAU:  Number six, same objection as

9    previously.  I have no objection except as it relates to

10   work product of the District Attorney; that is, if I

11   personally go out and talk to somebody, I'm not going to

12   reduce that to writing.  If I have a written statement

13   from them or a recorded statement, I'll provide that,

14   but I'm not going to produce --

15             THE COURT:  Well, you look --

16             MR. ROUSSEAU:  -- create a document.

17             THE COURT:  -- at the last sentence, the end

18   of the paragraph...

19             MR. ROUSSEAU:  Oh, absolutely, Your Honor.

20   I apologize.  Since this is Brady related, they'll have

21   that.

22             THE COURT:  All right.  Then six is granted.

23             MR. ROUSSEAU:  We've provided criminal

24   arrest and conviction records already of everyone I

25   believe that's been requested.

```
1                    Is that correct, Joetta?
2              MS. KEENE:  Yes, but I don't know if it's
3   everyone, but we asked for all the witnesses and they
4   provided us with about an inch thick of what appears to
5   be all --
6              THE COURT:  Anyone they anticipate
7   reasonably being called.
8              MS. KEENE:  Yeah, they just said they have,
9   and we have that.
10             MR. ROUSSEAU:  With the exception of peace
11  officers.
12             MS. KEENE:  Correct.
13             THE COURT:  And, in all fairness, I
14  authorized that to comply with NCIC/TCIC.  I verbally
15  authorized that a long time ago.
16             MS. KEENE:  Correct.
17             THE COURT:  And you understand, since we
18  have a record, that at the conclusion of trial you need
19  to return that information to the State unless it's
20  under seal in evidence with the court reporter.
21             MS. KEENE:  I understand.
22             THE COURT:  I know that, but I'm just
23  letting the FBI and Department of Public Safety know
24  that, as well.
25             All right.  You may continue.
```

```
 1              MR. ROUSSEAU:  No objection to eight, nine

 2    or ten.

 3              THE COURT:  Those will be granted, as was

 4    seven, previously.

 5              MR. ROUSSEAU:  Yes, sir.  No objection to

 6    number 11 except as relates to work product of the

 7    District Attorney's Office.

 8              THE COURT:  Eleven is granted as to -- if

 9    work product is something you're going to offer, like

10    you have someone draw you a diagram or you draw a

11    diagram to question a witness, if that's something to be

12    in evidence and offered, then obviously it switches to a

13    drawing or a chart that's being used for trial, but if

14    it's just for internal use only, not granted to that.

15              MS. KEENE:  I understand that, Judge.  I

16    wasn't asking for their work product, in any of these --

17              THE COURT:  No, I know.

18              MS. KEENE:  -- if that was interpreted.  I

19    don't want their work product.

20              THE COURT:  In all fairness, some of the

21    best work product sometimes turns into the best exhibits

22    because --

23              MS. KEENE:  It does.

24              THE COURT:  -- when you --

25              MS. KEENE:  It does.
```

```
 1              THE COURT:  -- interview the witness, you do
 2   a better job of it than maybe the officer who talked to
 3   them for five minutes when you talked to them for 30.
 4              So with that understanding, it's granted.
 5              MR. ROUSSEAU:  No objections to 12, 13 or
 6   14.
 7              THE COURT:  They'll each be granted.
 8              MR. ROUSSEAU:  Fifteen I believe is not
 9   applicable -- well, co-defendants...
10              THE COURT:  Well, there aren't any
11   co-defendants and the witnesses are covered by a prior
12   section.
13              MS. KEENE:  Correct.  We'll waive 15.
14              THE COURT:  Fifteen is waived.
15              MR. ROUSSEAU:  Number 16, no objection.
16              THE COURT:  It's granted.
17              MR. ROUSSEAU:  And that's the end of that
18   motion.
19              Next, Motion for Disclosure of Expert
20   Witnesses, they're entitled to that and obviously I have
21   no objection.
22              THE COURT:  That will be granted.
23              MR. ROUSSEAU:  And I have an identical, at
24   least -- I have the same request filed, also, Your
25   Honor.
```

```
 1              THE COURT:  Then let's just address that at
 2   this time.
 3              MS. KEENE:  We'll comply.  We don't have any
 4   at this point to disclose, but when we decide if we do
 5   or don't -- once we decide we do, then we will give
 6   those to the State.
 7              THE COURT:  All right.  And I will just tell
 8   you this.  Once you get your new trial date upon
 9   conclusion of the DNA evidence, or the other testing,
10   whenever you get your trial date, you'll disclose it to
11   them 30 days before the trial date.
12              MS. KEENE:  That's fine.
13              THE COURT:  Okay.  Or, let me say, no later
14   than 30 days before.  You can disclose whenever you see
15   fit, if you're sure you're going to call someone.
16              MS. KEENE:  Correct.
17              THE COURT:  And that's testifying experts.
18              MS. KEENE:  Correct.
19              THE COURT:  Or they don't get to testify if
20   you don't, but consulting experts, it's not applicable.
21              And you may continue, Mr. Rousseau.
22              MR. ROUSSEAU:  Yes, sir.
23              THE COURT:  Next.
24              MR. ROUSSEAU:  Motion in limine is the next
25   one, Defendant's statements.  I believe you ruled on
```

1    these yesterday, Your Honor.

2              THE COURT:  Hold on two seconds.

3              MS. KEENE:  Judge, I had one, Motion to

4    Conduct Voir Dire Examination of State's Expert

5    Witnesses.  Should be right after Expert Disclosure.

6              MR. ROUSSEAU:  Yeah.  Yes, I apologize.

7              THE COURT:  That's okay.

8              MR. ROUSSEAU:  I skipped over that one.

9              THE COURT:  Well, in all fairness, mine

10   aren't in the order you've been calling them.  I'm

11   having to surf so -- they're jumbled, so it doesn't

12   matter.

13             MR. ROUSSEAU:  I believe she's entitled to

14   it without an order.

15             THE COURT:  All right.  Defendant's 39.14

16   motion is granted.  You want 705 hearings or at least...

17             MS. KEENE:  At least ask if we do, I guess,

18   Judge.

19             THE COURT:  Yeah, I mean -- off the record.

20             (Discussion off the record)

21             THE COURT:  On the record.

22             All right.  As far as the 705 hearing, as we

23   approach the trial date, the State will let the Defense

24   know which of their many potential experts they're

25   likely to call in their case-in-chief and we'll have an

1    organizational heads-up on who probably will need a 705

2    hearing or not.  I'll let y'all informally discuss it.

3    But if in doubt, I just don't want the jury

4    sucker-punched with not being able to take breaks when

5    we can schedule 705 hearings around it to keep it

6    convenient for them.

7              MR. ROUSSEAU:  As long as -- I would request

8    that apply to both sides.

9              THE COURT:  Yes.  That would -- you reserve

10   the right to request a 705 hearing, as well.

11             MR. ROUSSEAU:  Thank you.

12             THE COURT:  So anyone that's going to call

13   an expert or elicit potentially what under the law we

14   would call expert testimony, even if they would

15   otherwise be a lay witness, advise the Court and

16   opposing counsel there could be a legal right to request

17   a 705 hearing and we have it addressed.

18             MS. KEENE:  That's correct.

19             THE COURT:  All right.

20             MR. ROUSSEAU:  Motion in limine?

21             MS. KEENE:  Judge, our first motion in

22   limine is Defendant's statements.  You ruled on those

23   yesterday.  I would not include those in the motion in

24   limine at this time based on the Court's rulings, but if

25   there were any other statements made by Thomas Olivas

 1  that we didn't cover yesterday, I guess I would still

 2  ask for that to be within the motion in limine.

 3           THE COURT:  Not be elicited unless...

 4           MS. KEENE:  Without having a hearing.  I

 5  think we covered them all yesterday but --

 6           MR. ROUSSEAU:  Anything I can think of right

 7  now, Your Honor, is going to be statements he's made to

 8  non-law enforcement personnel.

 9           THE COURT:  Here's my position.  Anything

10  that under the most liberal or conservative

11  interpretation might evoke 38.22 issues, if we haven't

12  already addressed it, bring it up outside the jury's

13  presence.  If it's to third parties who are not obvious

14  direct agents of the State and bound by Miranda-type

15  considerations, then the limine does not apply to

16  conversations with other individuals.

17           MS. KEENE:  And it specifically says law

18  enforcement.

19           THE COURT:  Yeah, I see that.

20           MR. ROUSSEAU:  Okay.

21           THE COURT:  And if they are an agent of law

22  enforcement, if the cop sent someone to go --

23           MS. KEENE:  Exactly.

24           THE COURT:  Yeah, so I -- I'm just making

25  that clear.

STATE v. THOMAS OLIVAS                                              42

```
 1              MS. KEENE:  I like that, Judge, thank you.
 2              THE COURT:  All right.  Motion in Limine,
 3    Convictions and Extraneous Bad Acts.
 4              MS. KEENE:  They've given us -- and I think
 5    the next motion, or incoming, is notice of extraneous
 6    offenses.  They've given a list of I'd say 20ish --
 7              THE COURT:  It's filed.
 8              MS. KEENE:  -- extraneous offenses.  I would
 9    say those would be the ones I'm talking about.  I know
10    of no others, and they obviously have not given me
11    notice of any others.  So it would be really any of
12    those, that conduct, I would like a motion in limine on
13    prior to it being offered into evidence.
14              THE COURT:  For purposes of the
15    guilt/innocence phase, if it's not part of the same
16    transaction/contextual evidence of an alleged murder and
17    arson, then it's granted.
18              MS. KEENE:  Oh, yeah, yeah, yeah,
19    absolutely.
20              THE COURT:  If there were to be a punishment
21    phase where there would be sentencing options for the
22    jury --
23              MS. KEENE:  Not.
24              THE COURT:  -- then 37.07 issues, the limine
25    wouldn't apply.
```

```
1                MS. KEENE:  Absolutely.

2                THE COURT:  They could follow the punishment

3     rules without previewing their punishment case for the

4     Court.

5                MS. KEENE:  I agree with that, Judge.

6                THE COURT:  All right.  Then within that

7     context, the motion is granted.

8                MS. KEENE:  And then, Judge, I can actually

9     address the next one.  We addressed the two motions to

10    suppress.  So the final motion we have is Motion to

11    Inspect, Examine and Test Physical Evidence.

12               The prosecutors -- both prosecutors and then

13    the Defense team have already met with Detective

14    Stewart, the crime scene officers.  We've already looked

15    at all of the evidence.  We did that prior to -- I filed

16    the motion, but we did it prior to -- I think it was

17    actually in December.  At that point we did not have any

18    desire to test any evidence, based on what we saw, based

19    on everything that we've seen in the reports.  Of

20    course, I don't know what's about to happen with the

21    evidence that's being taken to test.  So, basically,

22    this has been complied with.  We don't need any rulings

23    on this except I don't want to waive it because I don't

24    know what's going to happen with the new evidence that's

25    being tested.
```

```
 1              THE COURT:  Well, let me just say this.  All
 2   evidence that at this time you're aware will be offered,
 3   that any testing has been done, you received the
 4   reports, you have information, you don't need anything
 5   new, and based upon the stuff that Pat Eddings did not
 6   look at that we do not know if it's simply hair or hair
 7   with DNA potential, based on the outcome of that
 8   testing, you may or may not want to have independent
 9   testing.
10              MS. KEENE:  Exactly.  Perfectly stated.
11              THE COURT:  All right.  And that's the only
12   thing we know of that hasn't been addressed informally
13   and professionally by the parties throughout their
14   investigation.
15              MS. KEENE:  That's all we know about, Judge.
16              THE COURT:  All right.  Then the motion has
17   been complied with voluntarily up to date and you can
18   inspect and review the other evidence when it's back
19   just as you've done everything else, and if you want
20   something else, I will assume -- if there's no motion
21   requesting funds to test or retest, I will assume you're
22   satisfied.
23              MS. KEENE:  We are, Judge.
24              THE COURT:  I mean with the new stuff, as
25   well.
```

*STATE v. THOMAS OLIVAS*

```
1              MS. KEENE:  Yes, yes, yes, yes.
2              THE COURT:  All right.  If you don't file
3   anything new for a retest or additional tests, then I
4   will assume you're satisfied with what you have as you
5   are to date.
6              MS. KEENE:  Yes, sir.
7              THE COURT:  All right.  Any other motions
8   the Defense needs a record of at this time?
9              MS. KEENE:  None, Judge.
10             THE COURT:  Any motions or anything the
11  State needs a record of at this time, since we've
12  already covered your notice of expert issue?
13             MR. ROUSSEAU:  I don't think I have anything
14  else, Your Honor.  I may have a motion in limine as we
15  get to closer to trial, but nothing that can't be
16  handled right then.
17             THE COURT:  All right.  Off the record.
18             (Discussion off the record)
19             THE COURT:  Then we'll be in recess pending
20  an update on the trace evidence analysis or potential
21  for further analysis, which I hope we will get sooner
22  instead of later.  And we're in recess.
23             (Pretrial Hearing concluded at 11:15 a.m.)
24
25
```

```
1              COURT REPORTER'S CERTIFICATE
2   THE STATE OF TEXAS         )
3   COUNTY OF TARRANT          )
4       I, Karen B. Martinez, Official Court Reporter in and
5   for the 372nd District Court of Tarrant County, State of
6   Texas, do hereby certify that the above and foregoing
7   contains a true and correct transcription of all
8   portions of evidence and other proceedings requested in
9   writing by counsel for the parties to be included in
10  this volume of the Reporter's Record, in the
11  above-styled and numbered cause, all of which occurred
12  in open court or in chambers and were reported by me.
13      I further certify that this Reporter's Record of the
14  proceedings truly and correctly reflects the exhibits,
15  if any, admitted by the respective parties.
16      I further certify that the total cost for the
17  preparation of this Reporter's Record is located at the
18  end of Volume 21.
19      WITNESS MY OFFICIAL HAND this the 30th day of March,
20  2015.
21                      /s/ Karen B. Martinez
22                      Karen B. Martinez, Texas CSR 6735
                        Expiration Date:  12/31/2015
23                      Official Court Reporter
                        372nd District Court
24                      Tarrant County, Texas
                        (817)884-2996
25                      kbmartinez@tarrantcounty.com
```