1  REPORTER'S RECORD

2  VOLUME 5 OF 21 VOLUME(S)

3  TRIAL COURT CAUSE NO. 1376668R

4  COURT OF APPEALS CASE NO. 02-14-00412-CR

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS
3/27/2015 12:36:05 PM
DEBRA SPISAK
Clerk

5

6  THE STATE OF TEXAS          )  IN THE 372ND JUDICIAL
                              )
7                              )
                              )
8                              )
   VS.                        )  DISTRICT COURT
9                              )
                              )
10                             )
                              )
11                             )
   THOMAS OLIVAS              )  TARRANT COUNTY, TEXAS
12

13

14          * * * * * * * * * * * * * * * * * * * * * * * * * * * *

15              PRETRIAL HEARING

16          * * * * * * * * * * * * * * * * * * * * * * * * * * * *

17

18     On the 9th day of September, 2014, the following
   proceedings came on to be heard in the above-entitled
19  and numbered cause before the Honorable Scott Wisch,
   Presiding Judge, held in Fort Worth, Tarrant County,
20  Texas;
      Proceedings reported by computerized machine
21  shorthand with assisted realtime transcription.

22

23

      KAREN B. MARTINEZ, CERTIFIED SHORTHAND REPORTER
24              Official Court Reporter
            372nd Judicial District Court
25              Tarrant County, Texas

```
 1   APPEARANCES:

 2   ATTORNEYS FOR THE STATE:

 3       HONORABLE R. KEVIN ROUSSEAU
         SBOT NO: 17324950
 4       HONORABLE TAMLA S. RAY
         SBOT NO: 24046687
 5       Assistant Criminal District Attorneys
         Tim Curry Criminal Justice Center
 6       Fort Worth Texas  76196
         Phone: 817-884-1400
 7       Fax:   817-884-3333

 8   ATTORNEYS FOR THE DEFENDANT:

 9       HONORABLE TIM MOORE
         SBOT NO: 14378300
10       Attorney at Law
         115 West 2nd Street, Suite 202
11       Fort Worth, Texas  76102
         Phone: 817-332-3822
12       Fax:   817-332-2768

13           - AND -

14       HONORABLE JOETTA L. KEENE
         SBOT NO: 11165800
15       Attorney at Law
         204 South Mesquite Street
16       Arlington, Texas  76010
         Phone: 817-275-6611
17       Fax:   817-275-6621

18

19

20

21

22

23

24

25
```

```
 1                    CHRONOLOGICAL INDEX

 2                     Volume 5 of 21

 3                     PRETRIAL HEARING

 4   September 9, 2014                      Page Vol.

 5   The Court Calls Case for Trial...............   4   5

 6   Information on Excused Jurors(UNDER SEAL).....   5   5

 7   Jurors Excused by Agreement..................   6   5

 8   Defendant Waives Pretrial Arraignment and
     Reading of Indictment........................   7   5
 9
     Not Guilty Pleas Entered Through Counsel......   7   5
10
     State's Motion in Limine.....................   9   5
11
     Court's Ruling...............................  18   5
12
     Pretrial Hearing Concluded...................  21   5
13
     Court Reporter's Certificate.................  22   5
14

15

16                        EXHIBITS

17   COURT'S PRETRIAL
     NO.    DESCRIPTION              OFFERED ADMITTED VOL.

18   *  1   Audio Disc - TCSO Jail
            Telephone Recordings        --        20       5
19          (Could not be converted)

20   _____

21   (*) Denotes an exhibit designated for the record only.

22

23

24

25
```

STATE v. THOMAS OLIVAS

```
 1                P R O C E E D I N G S
 2            Tuesday, September 9, 2014   9:50 a.m.
 3               (OPEN COURT, DEFENDANT PRESENT)
 4               THE COURT:  All right.  Prior to proceeding
 5    with trial on the merits in Cause Number 1376698R, the
 6    State versus Thomas Olivas, a couple of housekeeping
 7    matters.
 8               First of all, I would like the record to
 9    reflect that all the jurors are now assembled in the
10    hall, that the questionnaires, all but I think seven or
11    eight questionnaires, had been completed in advance,
12    were delivered to the parties yesterday, and those
13    individuals who did not follow the online instruction to
14    register have completed manual questionnaires this
15    morning.  And everyone is supposed to have all of those.
16               Is that correct, State?
17               MR. ROUSSEAU:  We do, Your Honor.
18               THE COURT:  And Defense?
19               MR. MOORE:  That's correct.
20                     *  *  *  *  *  *  *
21
22
23
24
25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14                    (THIS PAGE IS UNDER SEAL)

15

16

17

18

19

20

21

22

23

24

25              THE COURT:  And the parties are in agreement

*STATE v. THOMAS OLIVAS*

1   that 13, 35 and 51 should be excused.  And that was done

2   prior to voir dire.

3            Is that correct, State?

4            MR. ROUSSEAU:  Yes, Your Honor.

5            THE COURT:  Defense?

6            MR. MOORE:  Yes.

7            THE COURT:  Also, the parties have advised

8   me that they have, no disrespect to Tamla and Joetta,

9   but basically a gentlemen's agreement, if you will,

10  under the old rules, that 36 and 30 are going to be

11  excused for reasons the record doesn't need to reflect

12  other than that both parties are agreeing those people

13  shouldn't serve, and prior to making strikes, they will

14  be struck from the official list by agreement.

15           Is that correct, State?

16           MR. ROUSSEAU:  Yes, Your Honor.

17           THE COURT:  And Defense?

18           MS. KEENE:  Yes, Your Honor.

19           THE COURT:  All right.  Is there anything

20  else relating to the jury list at the present time that

21  either side needs to address?

22           MR. ROUSSEAU:  Not related to the jury list.

23           MR. MOORE:  No, not from us.

24           THE COURT:  All right.  Then one other

25  housekeeping matter.  I've been advised several times by

1   Defense Counsel and again this morning that the

2   Defendant -- that's you, Mr. Olivas, you need to listen

3   up.  Your lawyers have told me before we went on the

4   record that you have a copy of all the indictments,

5   including the one on trial, you can read and write

6   English, you're able to talk to them about it, and

7   they're going to waive a formal reading of the

8   indictment until the jury is sworn and the trial on the

9   merits commences, and is that all right with you, sir?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  And they're going to waive

12   what's called a formal arraignment, where I read the

13   charges in open court and you enter a plea, and your

14   lawyers are simply going to enter pleas of not guilty to

15   all charging paragraphs of this 1376698R indictment, and

16   that would be four separate paragraphs, and they're

17   going to do that on your behalf, and I assume that's all

18   right, too?

19              THE DEFENDANT:  Yes, sir.

20              THE COURT:  And so do you officially waive

21   arraignment and enter those pleas at this time,

22   Mr. Moore?

23              MR. MOORE:  Yes.

24              THE COURT:  All right.  Let the record so

25   reflect formal arraignment waived, not guilty pleas

1    entered before voir dire.

2              I see prior to voir dire that Defendant has

3    filed with the Clerk of the Court a sworn application

4    for community supervision if convicted; a sworn request

5    prior to voir dire that if convicted of anything less

6    than capital murder that, A, could be probation eligible

7    depending on charge; B, wants jury sentencing if

8    sentencing involves a range of punishment; and both

9    sides have signed an agreement that if the jury writes

10   notes during deliberations, they can be answered in

11   writing after reviewed by the parties without bringing

12   them into the courtroom.

13             Does the Defense agree with all those

14   statements and what's in the clerk file?

15             MR. MOORE:  We do.

16             THE COURT:  And does the State agree with

17   agreement on notes?

18             MR. ROUSSEAU:  Just with the observation

19   that a potential lesser is murder for which probation is

20   not a possibility anyway, but with that, yes, Your

21   Honor, I agree.

22             THE COURT:  I mean, you know, in all

23   fairness, based on the nature of the indictment and

24   depending of course on the facts, in the hypothetical

25   world, you might have charges involving the underlying

1   felony and not the death, and vice versa, some of which

2   would be probation eligible, some not, and depending on

3   what gets charged in the event of something that were

4   applicable, I think Defense is aware, as the Court is,

5   based on the offense date, murder is no longer a

6   probation eligible offense.  That's no surprise to

7   anyone.

8              Is that correct, Mr. Moore?

9              MR. MOORE:  That's correct.  We don't intend

10  to go into it on voir dire, quite frankly.

11             (Pause in proceedings)

12             THE COURT:  Okay.  All right.  On the

13  record.

14             Are there any legal issues either side needs

15  to address to the Court since the jury panel, those that

16  remain that haven't been excused, is now assembled, from

17  the State?

18             MR. ROUSSEAU:  We have a motion in limine,

19  Your Honor, for voir dire purposes regarding extraneous

20  information regarding the victim, Asher Olivas.  This is

21  a capital murder alleging the death of two individuals

22  in a single criminal episode.  The fact of the matter

23  is, the two victims are mother and 13-month-old son.

24  There is no allegation in the indictment regarding the

25  age of the victim, that is, Asher Olivas, which could

1  have elevated into a capital murder based strictly on
2  his age.  We have not made that allegation.  So the only
3  thing before the jury is, for the jury to consider is,
4  whether or not there were two single victims in the same
5  criminal transaction.
6          For that reason, I would object to any
7  mention of the age of the victim, of Asher Rion Olivas,
8  during jury selection.  If there's any need to address
9  particularized knowledge any individual juror might have
10 from publicity or any other source, I would request you
11 simply bring those individuals up and find out what that
12 information is rather than inform the entire jury panel
13 that we're talking about a child under the age of ten.
14 We can discern what it is they know and whether it's a
15 problem without informing everybody of the age of the
16 child.
17          THE COURT:  What about the generic question,
18 "Does anyone have any problem giving full and fair
19 attention to an offense if the facts they happen to hear
20 involve a victim who might have been a child versus an
21 adult"?
22          MR. ROUSSEAU:  That is --
23          THE COURT:  The generic question.
24          MR. ROUSSEAU:  That's a binding question,
25 Your Honor.  It's asking them to resolve or not resolve

1  an issue based upon a fact that's not a part of the

2  indictment.

3      THE COURT:  What about the case where the

4  priest is a victim and the Court of Criminal Appeals

5  says the generic issue of what if a priest was a victim

6  could you at least be able to, as a Catholic or

7  otherwise, make an independent and fair assessment and

8  not be distracted by that factor but apply the law to

9  the facts, not what would you do or how would it affect

10  you but just the generic idea of, quite frankly,

11  avoiding a mistrial from I think their viewpoint, if

12  it's someone comes here and someone freaks out,

13  without -- I agree with you about a specific age.

14      MR. MOORE:  I agree with that, Your Honor.

15      THE COURT:  Just a generic issue, if you

16  were to hear evidence that a victim of a crime whether

17  it was an adult or a child, would it make any difference

18  to you, without saying in this case it is or it isn't,

19  since we're not supposed to be saying what is or isn't

20  anyway.

21      MR. ROUSSEAU:  I still think that's too

22  specific.  I can see -- and I don't remember -- I do

23  remember the case that you're talking about, the

24  language, but I don't remember what the facts of that

25  case involved.

```
 1            THE COURT:  A priest was killed --

 2            MR. ROUSSEAU:  Was it --

 3            THE COURT:  Yeah, or a nun.  It was a priest

 4   or a nun was killed.

 5            MR. MOORE:  It was a nun.

 6            MS. KEENE:  Nun.

 7            THE COURT:  Nun, yeah.  And I think people

 8   have said priest before like for voir dire purposes, the

 9   same type of thing, or a nun.  Because there's a

10   potential visceral response that any person of faith,

11   Catholic or not, or other -- that's like a helpless-type

12   category, is there an emotional reaction that would keep

13   you from making an objective determination, but not

14   whether it's an old nun or a novitiate or whatever the

15   circumstances, but just the generic question.

16            MR. ROUSSEAU:  Okay.  Well, my position,

17   Your Honor, is still that it's too specific to the facts

18   of our case.  It's a lightning rod issue that the jury

19   will not be asked to consider.  It's not a part of the

20   indictment.  And it's something that frankly is going to

21   serve no purpose other -- we're not even able to flesh

22   out the details.

23            THE COURT:  I understand.

24            MR. ROUSSEAU:  So it's going to do nothing

25   more than cause a knee-jerk reaction from the people.
```

```
1            THE COURT:  Or find out if someone says if
2    there's a nun that's a victim don't ever call me because
3    I could never be fair no matter what the facts are.
4            MR. ROUSSEAU:  Sure.
5            MR. MOORE:  And, Judge, in response, I do
6    plan on putting the indictment and the elements up to
7    discuss with the jury.
8            THE COURT:  And I understand that, and I
9    think --
10           MR. ROUSSEAU:  I do, too.
11           THE COURT:  -- in Kevin's defense, he could
12   have charged a child under six, he could have charged in
13   the course of an arson, he could have charged all kinds
14   of different theories of capital murder, and this
15   indictment is very clean and it's a multiple death, same
16   criminal episode, and so it doesn't matter as a matter
17   of law on their burden of proof.  It's only an issue of
18   whether there is a due process and effective assistance
19   of counsel thing that kind of stretches and modifies the
20   general non-binding rules of jury selection.  It isn't
21   binding of what would you do in this case.  It's if the
22   general concept of the victim were a female or a child
23   or anything could you emotionally make an objective and
24   fair decision, or a nun or someone that would fit into a
25   subcategory, or of the race of a person, the general
```

1    question, would that affect your ability to be fair and

2    make an objective and fair decision and let the chips

3    fall where they may.

4          In the case about the nun and a couple of

5    companion cases clearly say you can throw out general

6    categories, does anyone have problems with general

7    categories of accused or victims, and that you're not

8    letting age or race or sex affect your ability to make a

9    decision.  And, quite frankly, I hear every day good

10   lawyers on both sides talk about that the person on

11   trial might be Arab-American or African-American or

12   Asian-American, does that cause anyone a problem.  And

13   the fact is, that's a fact and that's binding in a way,

14   but it's not asking will you hold it against him but do

15   you have a problem with the category of someone's

16   ethnicity, and I don't see this as being any different.

17            MR. ROUSSEAU:  Well, then --

18            THE COURT:  Because you're not talking about

19   "this defendant" any more than your particular victim.

20            MR. ROUSSEAU:  I'm sorry, Your Honor, I

21   didn't mean to interrupt you.

22            THE COURT:  That's okay.  I kept going.

23   That's my fault, too.

24            MR. ROUSSEAU:  The distinction I would draw

25   there, and if I misheard you, I'll stand corrected, is

1    that with those, I believe you were talking about the

2    defendant on trial --

3              THE COURT:  Or a victim.

4              MR. ROUSSEAU:  -- is they're usually visible

5    to the jury.

6              THE COURT:  I know, but it still doesn't

7    count.  He doesn't count.  We're not talking about his

8    case; we're talking about any case.  The rules of voir

9    dire -- and I know, human nature, people say, including

10   the State and the Defense, people of good conscience who

11   try to follow the rules, say "this defendant has a right

12   to remain silent, would anyone punish him".  No, it's

13   not "this" defendant; it's "any" defendant.  It would be

14   objectionable to make reference, for them to their

15   client or you to their client, but people aren't doing

16   it make reference to him because that's, as you're

17   saying, the common sense, that's the person who's here,

18   and all citizens have the right, but if you look at the

19   voir dire rules, it's not talking about him or your

20   victim or anyone else.  It's talking about any case with

21   any victim and any defendant.  And people always

22   personalize it just subconsciously because that's how we

23   have conversations in life, including with jurors.  It's

24   not meant to bypass the rules, but that's why nuns as a

25   category is okay, children as a category might be okay

16

```
1   but not whether it's a two-year-old or a 12-year-old,
2   not whether -- you know, "clergymen" as a general rule.
3   There are categories that are allowed.
4           And, first of all, his point as to under six
5   is well-taken.  That is irrelevant as a theory of proof.
6           What is it you wanted to do and then I'll
7   let him object if --
8           MR. MOORE:  Basically exactly what you -- I
9   intend to have the elements, the four charging
10  paragraphs, and explain to them what the State's burden
11  is and -- but I did plan to go into the fact that one
12  victim -- how would that affect you if a victim was a
13  child.
14          THE COURT:  Not to go into the fact --
15          MR. MOORE:  Not to go into the age, the
16  facts or anything.  I just I think I'm entitled to say
17  this because, you know, if it leads to a preemptory
18  challenge, or even if you say it's binding, if it leads
19  to a challenge for cause, I think it's still proper.
20          THE COURT:  Well, and I will just say this.
21  The way you prefaced your question is probably the
22  reason for his limine motion, is it is a fact.  You
23  don't get to say the victim in this case is a child.
24  You get to say in any case you have to make a decision
25  whether --
```

```
 1            MR. MOORE:  Right.
 2            THE COURT:  -- someone is a senior citizen
 3   or a child or an in-between age, whether they're healthy
 4   or other, you're supposed to decide what do the facts
 5   prove and does anyone have a problem if in a case
 6   someone is elderly or someone is a child or someone is
 7   disabled; in making an objective decision, what are the
 8   facts and do they prove anyone committed a crime and not
 9   be emotionally affected and sway the facts by the status
10   of a victim or a defendant or anyone else in any case.
11   The generic question is allowed.  The saying "in this
12   case the victim is a child," I think crosses the line.
13   "In this case the victim is a nun" crosses the line.  If
14   you say, "What if the victim were like a nun or an old
15   person, does that cause a problem," I think it doesn't
16   cross the line, because if someone says, hey, if anyone
17   ever did anything to a nun, I am not going to
18   objectively be able to make a guilt or not guilty
19   decision," or "follow an objective range of punishment,"
20   "my emotional, spiritual," whatever, "is going to take
21   over and I can't make a cool, collected decision based
22   on the law and the facts".  And if you phrase that in a
23   term of would the age of a person affect your ability to
24   do that, whether it be a child or whatever, if it's put
25   in the generic context of "your duties are the same,
```

1    whether the victim is three days old or 103 years old,

2    your rules are the same," I don't have a problem with

3    generically making sure -- and, quite frankly, I don't

4    have a problem preventing mistrials, either.  Because

5    what happens when that happens is that person crosses

6    their arms in the jury room at the end of the trial and

7    says, "A kid, there is no flexibility," and then you

8    have jury misconduct and you do it all again.

9              So it's granted in the context of talking

10   about "this particular case the victim is..." versus "if

11   in a case is the age of a victim going to affect your

12   ability to objectively make a decision."  If you use

13   examples of a child or elderly or anywhere in between,

14   some people -- and you can point out, "Some people have

15   sympathy for the elderly and it clouds their vision to

16   decide are they even a victim or not, or certainly did

17   the person on trial do anything or not," because you see

18   an old person, you give sympathy and you're not

19   objective anymore, or sometimes as a child that's a

20   victim.  It clouds your objectivity.  Just like the

21   things with cops, you can handle it the same way, is if

22   you're going to call police officers, "if anyone has a

23   problem trusting the testimony of a police officer,"

24   well, that's kind of binding but it's not really because

25   it's not "will you believe Officer Flores, homicide

 1   investigator".  It's "will you automatically believe or

 2   disbelieve a cop because of their status as a cop

 3   because of some life experience".  It's the same issue

 4   with having a child or an elderly victim or defendant of

 5   a particular race or sex or creed that offends someone's

 6   personal sensibilities that wouldn't affect a fair and

 7   objective juror.

 8            So granted in part, denied in part to the

 9   generic question.

10            Anything else?

11            MR. ROUSSEAU:  Offhand, I cannot think of

12   anything else, Your Honor.

13            THE COURT:  All right.

14            MR. MOORE:  This can be off the record.

15            (Discussion off the record)

16            THE COURT:  One last housekeeping matter on

17   the record.

18            I have been advised by the parties and the

19   court reporter that the CD/DVD, electronic recording of

20   the various phone calls that were discussed and subject

21   to the motion for continuance, have been surrendered to

22   the court reporter.  It's marked as Court's Pretrial 1.

23   And I want the record to reflect those are the items

24   that were the subject matter of the continuance motion

25   and the discussion surrounding the same.

```
 1                (Court's Pretrial Exhibit No. 1 admitted)
 2                THE COURT:  And, for the record,
 3  Mr. Rousseau, that's the only copy, other than the one
 4  in the possession of the Defense, that you were aware of
 5  that; is that correct, sir?
 6                MR. ROUSSEAU:  Yes, sir.  We are at a
 7  disadvantage now.
 8                THE COURT:  All right.  And I will remind
 9  the Defense that the limine applies to both sides as to
10  any reference to any calls from the jail.
11                MR. ROUSSEAU:  I say that with a grain of
12  salt, Your Honor.
13                THE COURT:  I understand that.
14                MR. MOORE:  So subject to the ruling of the
15  Court, we're not required to file a motion in limine,
16  and it's my understanding that subject to your ruling
17  that neither party will be able to use any kind of phone
18  recordings?
19                THE COURT:  Unless -- there's two things
20  that the Court said yesterday in the midst of a lot of
21  discussion, and I will admit that, between everybody and
22  setting a factual record for your motion, no one makes
23  reference to any calls being made to and from the
24  Defendant in jail to anyone, either receiving them or
25  him making calls.  There's no reference to jail calls
```

```
1   from either side without approaching the bench and
2   saying here's why it's relevant and here's why it's not
3   going to -- or with the recognition it might change a
4   prior ruling.  No one makes reference to the existence
5   of or the contents of anything that's on Court's
6   Pretrial Exhibit 1 other than what's in the record by
7   officers of the Court as to how the exhibit was created
8   in the limited review y'all did in your office.  It's
9   off limits unless you approach the bench first.
10                  MR. MOORE:  Thank you.
11                  THE COURT:  But that's a two-way street.
12                  And in all fairness, too, cannot be used
13  offensively or defensively regardless of the contents.
14  And as Mr. Rousseau points out, they don't have the
15  ability to continue to listen to it.  You're allowed to
16  keep your copy in the remote event that at some point in
17  the future there's something that actually would be
18  Brady and you can make a subsequent record.  And if not,
19  I'll expect your copy be turned into the court reporter
20  after your review.
21                  MR. MOORE:  Thank you.
22                  THE COURT:  All right.  Sheriff, lock and
23  load.
24                  (Pretrial Hearing concluded at 10:15 a.m.)
25
```

STATE v. THOMAS OLIVAS

```
 1              COURT REPORTER'S CERTIFICATE
 2   THE STATE OF TEXAS        )
 3   COUNTY OF TARRANT         )
 4      I, Karen B. Martinez, Official Court Reporter in and
 5   for the 372nd District Court of Tarrant County, State of
 6   Texas, do hereby certify that the above and foregoing
 7   contains a true and correct transcription of all
 8   portions of evidence and other proceedings requested in
 9   writing by counsel for the parties to be included in
10   this volume of the Reporter's Record, in the
11   above-styled and numbered cause, all of which occurred
12   in open court or in chambers and were reported by me.
13      I further certify that this Reporter's Record of the
14   proceedings truly and correctly reflects the exhibits,
15   if any, admitted by the respective parties.
16      I further certify that the total cost for the
17   preparation of this Reporter's Record is **located at the**
18   **end of Volume 21**.
19      WITNESS MY OFFICIAL HAND this the 30th day of March,
20   2015.
21                      /s/ Karen B. Martinez
22                      Karen B. Martinez, Texas CSR 6735
                        Expiration Date: 12/31/2015
23                      Official Court Reporter
                        372nd District Court
24                      Tarrant County, Texas
                        (817)884-2996
25                      kbmartinez@tarrantcounty.com
```