FILED
COURT OF APPEALS
SECOND DISTRICT OF TEXAS

September 3, 2015

DEBRA SPISAK, CLERK

ACCEPTED
02-14-00412-CR
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
9/2/2015 5:22:25 PM
DEBRA SPISAK
CLERK

RECEIVED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS

9/2/2015 5:22:25 PM
DEBRA SPISAK
Clerk

# IN THE COURT OF APPEALS
## FOR THE SECOND COURT OF APPEALS DISTRICT
## FORT WORTH, TEXAS

| | | |
|---|---|---|
| **THOMAS OLIVAS,** | § | |
| **APPELLANT** | § | |
| | § | |
| **VS.** | § | **NO: 02-14-00412-CR** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| **APPELLEE** | § | |

## AN APPEAL FROM CONVICTION AND SENTENCE
## IN CAUSE NUMBER 1376698R
## IN THE 372ND DISTRICT COURT, OF
## TARRANT COUNTY, TEXAS
### *CAPITAL MURDER*

## APPELLANT'S BRIEF

WES BALL
State Bar No. 01643100
4025 Woodland Park Blvd., Suite 100
Arlington, Texas 76013
Email:  WBnotices@ballhase.com
Tel: (817) 860-5000
Fax: (817) 860-6645

ATTORNEY FOR APPELLANT

**Oral Argument is Requested**

**IN THE COURT OF APPEALS
FOR THE SECOND COURT OF APPEALS DISTRICT
FORT WORTH, TEXAS**

| | | |
|---|---|---|
| **THOMAS OLIVAS,** | § | |
| **APPELLANT** | § | |
| | § | |
| **VS.** | § | **NO:  02-14-00412-CR** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| **APPELLEE** | § | |

**AN APPEAL FROM CONVICTION AND SENTENCE
IN CAUSE NUMBER 1376698R
IN THE 372ND DISTRICT COURT, OF
TARRANT COUNTY, TEXAS**

**<u>BRIEF OF APPELLANT</u>**

TO THE HONORABLE JUDGES OF THE COURT OF APPEALS:

COMES NOW THOMAS OLIVAS, Appellant and files his appeal from conviction and sentence in cause number 1376698R out of the 372ND District Court of Tarrant County, Texas.

i

## <u>LIST OF INTERESTED PARTIES</u>

Pursuant to the Texas Rules of Appellate Procedure, Rule 38.1(a), Appellant lists the following persons who have an interest in the appeal for the purpose of the Court's determining conflicts and recusals:

**<u>JUDGES:</u>**
Hon. Scott Wisch
372nd District Court
401 W. Belknap St.

**<u>APPELLANT:</u>**
Thomas Olivas
TDCJ # 01957504
Allred Unit
2101 FM 369 N
Iowa Park, TX 76367

**<u>TRIAL COUNSEL:</u>**
Hon. R. Kevin Rousseau
Hon. Tamla S. Ray
Assistant District Attorney
401 W. Belknap St.
Fort Worth, Texas 76196

Hon. Tim Moore
Attorney for Defendant
115 W. Second St., Ste. 202
Fort Worth, Texas  76102

Hon. Joetta Keene
Attorney for Defendant
204 S. Mesquite Street
Arlington, TX 76010

**<u>APPELLATE COUNSEL:</u>**
Hon. Sharen Wilson, District Attorney
Hon. Debra Windsor,
Assistant District Attorney & Chief
of the Post-Conviction Division
401 W. Belknap St.
Fort Worth, Texas 76196

Wes Ball
Counsel for Appellant
4025 Woodland Park Blvd.
Suite 100
Arlington, Texas 76013

## STATEMENT REGARDING ORAL ARGUMENT

Appellant **DOES** request oral argument. The issues in this case are sufficiently complex that the Court will benefit from oral argument.

# **TABLE OF CONTENTS**

LIST OF INTERESTED PARTIES ........................................................................... ii

TABLE OF AUTHORITIES ...............................................................................v, vi

STATEMENT OF THE CASE......................................................................................1

SUMMARY OF THE ARGUMENTS ......................................................................1

POINT OF ERROR NUMBER ONE
   (Legal insufficiency of evidence) ........................................................................8

POINT OF ERROR NUMBER TWO
   (Erroneous admission of cellular phone location records) ................................14

POINT OF ERROR NUMBER THREE
   (Erroneous admission of extraneous conduct evidence) ...................................21

PRAYER .....................................................................................................................22

CERTIFICATE OF SERVICE ..................................................................................23

CERTIFICATE OF COMPLIANCE.........................................................................24

# TABLE OF AUTHORITIES

## CASES

Barfield v. State, 416 S.W.3d 743 (Tex. App. – Houston [14th] 2013) ...................20

Brooks v. State, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010)...........................11

Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)...........................11

Commonwealth v. Augustine, 4 N.E.3d 846, 854 (Mass. 2014)..................... 18, 19

Graham v. State, 566 S.W.2d 941 (Tex. Crim. App. 1978) ........................... 13, 18

In re Application of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d), 707
  F.3d 283, 287 (4th Cir. 2013) ..............................................16

In re Application of the United States for Historical Cell Site Data, 724 F.3d 600
  (5th Cir. 2013) ........................................................20

In re Application of U.S. for an Order Authorizing Disclosure of Location Info. of
  a Specified Wireless Tel., 849 F. Supp.2d 113, 120 (E.D.N.Y. 2011) ...............18

In re Application of U.S. for an Order Authorizing Disclosure of Location Info. of
  a Specified Wireless Tel., 849 F.Supp.2d 526, 539 (Dist. Ct. Md. 2011) ..........19

In re Application of U.S. for an Order Authorizing the Release of Historical Cell-
  Cite Info., 809 F.Supp.2d 113, 120 (E.D.N.Y 2011) ...........................19

Jackson v. Virginia, 443 U.S. 307, 319 (1979).....................................10

Katz v. United States, 389 U.S. 347, 360 (1967)...................................18

Kyllo v. United States, 533 U.S. 27, 31-33 (2001).................................18

Montgomery v. State, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) ...................22

Richardson v. State, 865 S.W.2d 944, 948 (Tex. Crim. App. 1993)...................17

Russell v. State, 113 S.W.3d 530 (Tex. App. – Fort Worth 2003) pdr. ref'd.........22

State v. Earls, 70 A.3d 630 (New Jersey Sup. Ct. 2013)............................17

Stobaugh v. State, 421 S.W.3d 787, 862 (Tex. App. – Fort Worth 2014)
  pet. ref'd. ..........................................................14

Temple v. State, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013)......................14

Tracey v. State, 152 So.3d 504, 526 (Fla. 2014) ..................................19

United States v. Graham, 2015 WL 4637931 (4th Cir. Aug. 5, 2015).............. 18, 20

United States v. Jones, 565 U.S. ____, 132 S.Ct. 945 (2012) ................... 18, 19

United States v. Miller, 425 U.S. 435, 442 (1976) ................................20

Winfrey v. State, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010).....................14

Winfrey v. State, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013).....................14

**<u>Table Of Authorities</u>** (continued)

## <u>OTHER AUTHORITIES</u>

Renee McDonald Hutchins, *Tied Up in Knotts? GPS Technology and the Fourth Amendment*, 55 UCLA L.Rev. 409, 455 (2007).................................................19

Texas Code of Criminal Procedure, Article 18.21..............................................15

Texas Code of Criminal Procedure, Article 38.23............................ 1, 2, 14, 15, 21

Texas Constitution, Article 1, Section 9 ..................................... 1, 2, 14, 15, 17, 21

Texas Rules of Appellate Procedure, Rule 9.4(i)(3)............................................24

Texas Rules of Appellate Procedure, Rule 38.1(a) ..................................... ii

Texas Rules of Criminal Evidence 401 ...............................................................21

Texas Rules of Criminal Evidence, Rule 403 ......................................................21

18 U.S.C. § 2703(d) ................................................................................... 15, 16

United States Constitution, 4th Amendment........................... 1, 2, 14, 15, 17, 18, 21

United States Constitution, 6th Amendment .......................................................17

United States Constitution,  14th Amendment .................................. 1, 2, 14, 15, 21

## STATEMENT OF THE CASE

Appellant entered a plea of not guilty to an indictment (CR. I, 6,7; RR. VI, 32) alleging the felony offense of capital murder.  Following his plea of not guilty, trial proceeded before a jury (RR. VI – XIX).   Following the presentation of evidence and argument, the jury returned its verdict of guilty of the offense of capital murder. (CR. I, *sealed*; RR. XX, 79).  The State having waived a sentence of death by lethal injection (RR. VI, 160), upon a finding of guilt, Appellant was sentenced to confinement in the Institutional Division of the Texas Department of Criminal Justice for life without the possibility of parole. (CR.I, 183-184; RR. XX, 82).  Appellant timely files this his brief complaining of error in the trial below for which he appeals.[1]

## SUMMARY OF ARGUMENT

Appellant argues in his brief that the evidence to support a finding of guilt for the offense of capital murder is legally insufficient.  Appellant further argues that the manner in which certain phone records were obtained by the State violated his rights to be free from unlawful search and seizure pursuant to the 4th and 14th Amendments of the United States Constitution, Article 1, Section 9 of the Texas Constitution and Article 38.23 Texas Code of Criminal Procedure.  The trial court

---

[1]   Appellant's brief was due on August 31, 2015.  Due to the complexity of the issues and the voluminous size of the trial record, undersigned counsel is filing Appellant's brief two (2) days late.   Contemporaneous with the filing of his brief, Appellant is filing a Motion for Extension of Time for the two days.

erred in denying Appellant's Motion to Suppress Evidence. The trial court erred in permitting a substitute forensic pathologist to testify concerning findings from an autopsy not performed by the witness substitute pathologist. The trial court erred in limiting cross examination of the lead detective concerning the quality of his investigation by prohibiting evidence concerning an alternative suspect when such evidence was not offered for the truth of the matters asserted. The trial court erred in permitting admission of extraneous conduct evidence concerning a request to purchase a weapon that was not relevant, whose probative value was outweighed by the prejudicial effect of such evidence.

## ISSUES PRESENTED

### POINT OF ERROR NUMBER ONE:

THE EVIDENCE WAS LEGALLY INSUFFICIENT
TO SUPPORT A FINDING OF GUILT

### POINT OF ERROR NUMBER TWO:

THE TRIAL COURT ERRED IN PERMITTING
ADMISSION OF PHONE RECORDS OBTAINED IN
VIOLATION OF DEFENDANT'S RIGHTS TO BE FREE FROM
UNREASONABLE SEARCH AND SEIZURE AS PROVIDED IN
THE 4TH AND 14TH AMENDMENTS OF THE UNITED STATES
CONSTITUTION, ARTICLE 1 SECTION 9 OF THE TEXAS
CONSTITUTION AND ARTICLE 38.23 TEXAS CODE OF
CRIMINAL PROCEDURE

## **POINT OF ERROR NUMBER THREE:**

THE TRIAL COURT ERRED IN ALLOWING ADMISSION OF
EXTRANEOUS CONDUCT EVIDENCE THAT WAS
IRRELEVANT AND WHOSE PROBATIVE VALUE
WAS SUBSTANTIALLY OUTWEIGHED BY ITS
PREJUDICIAL EFFECT

## **STATEMENT OF FACTS**

On March 20, 2011 Arlington Texas Fire Department was dispatched to an apartment fire at 10:10 p.m.  (RR. VII, 53, 57).  Paul Isaac Lopez who was a resident of the apartment complex made the 911 emergency call.  Mr. Lopez knew the resident of the apartment that died in the fire, Mechelle Gandy and her little boy Asher Olivas. (RR. VII, 78).  Mr. Lopez described seeing a person in a nearby breezeway around 9 to 10 pm.  Mr. Lopez could not tell if the person was male or female or their race or ethnicity.  This person may or may not have been associated with the fire.  Mr. Lopez saw no one else enter or leave the victims' apartment. (RR. VII, 91-93).  Mr. Lopez observed the fire department removing Mechelle Gandy's body from the apartment and doing CPR on her. (RR. VII, 102).   It was determined that Mechelle Gandy was deceased and had stab wounds on her body. (RR. VII, 263-264).  Mechelle Gandy was the mother of Asher Olivas.  (RR. VII, 217).  Appellant was reported to be the possible father of Asher Olivas. (RR. VII, 221).

Fire Marshal Stephen Lea assisted in the investigation of the fire and discovered the remains of Asher Olivas, a child badly burned inside the apartment. Investigator Lea determined that the child's room was the point of origin of the fire. (RR. XII, 9-13, 28, 48). Investigator Lea assisted in processing a vehicle that was driven by Appellant and in doing so "smelled" gasoline in the vehicle. Lea secured a carpet sample for analysis. The sample was analyzed and the results were negative for gasoline. (RR. XII, 64-67, 95, 128-129). Appellant had borrowed the vehicle from Amanda Rowe and on the evening of March 20, 2011 had called her about when he was to return the vehicle. At the time he called her, he apologized for the car smelling of gasoline describing that he had moved a lawn mower and spilled the gas. (RR, X, 69, 73). Appellant advised Ms. Rowe in a later conversation that at the time of the fire, he had been at a bar in Arlington playing a video game called Golden Tee. He also said that the woman that was killed claimed he was the father of her son, but that he did not believe that he was. (RR. X, 86, 87). It was later determined that Appellant was likely the father of Asher Olivas. (RR, XVIII, 6-8, SX 303).

Law enforcement officers encountered Appellant the following day as he arrived at his apartment from his job at Best Buy. Appellant agreed to accompany officers to a local police department for an interview. (RR. X, 182-183, 189). Officer Shinpaugh searched Appellant's apartment and found no incriminating

evidence. (RR. X, 191). Appellant cooperated by providing his consent to search his apartment and vehicle. (RR. X, 230). Appellant also consented to providing a DNA buccal swab, a search of his cellphone, and a consent to take photographs of his clothing and body. (RR. XII, 212-215).

A trace analyst recovered material from Mechelle Gandy's body including foreign hairs. (RR. XIII, 62-63). These hairs were analyzed and compared to samples from Appellant and Mechelle Gandy. Hair was determined to be of foreign origin and inconsistent with the hair of Appellant and Ms. Gandy. (RR. XVIII, 27). Lead Detective Byron Stewart testified that there were three hairs on Mechelle Gandy's body that were not hers. (RR. XV, 86-88).

An autopsy was performed by Shiping Bao a Deputy Medical Examiner for Tarrant County. Dr. Bao was not called as a witness. Nizam Peerwani, M.D., the Chief Medical Examiner for Tarrant County testified concerning the cause of death of Mechelle Gandy and Asher Olivas. Dr. Peerwani based his opinions on the work of Dr. Bao, photographs created at the time of the autopsy and other forensic testing. It was Dr. Peerwani's opinion that Mechelle Gandy died by being stabbed and was deceased at the time of the fire based on an absence of carbon monoxide in her blood and no soot in her tracheal and bronchial tree. (RR. XIV, 8-13, 19-20). Dr. Peerwani's opinion concerning the cause of death of Asher Olivas was that there was no soot in his trachea or bronchia and no carbon monoxide in his

blood, but due to the severity of the burn damage to the body he could not be certain about the mechanism of death.  He did rule Asher's death as a homicide. (RR. XIV, 20).

Recorded interviews of Appellant were admitted and published to the jury. During these interviews Appellant denied involvement in the fire and deaths of Mechelle Gandy and Asher Olivas.  Appellant told detectives that he was supposed to go see Mechelle Gandy the previous evening, but did not do so.  Appellant said he had intimate encounters with Mechelle Gandy and she became pregnant. Mechelle Gandy had been served with papers regarding child support.  (RR. XIV, 152, 154; SX 5 & 6).

The last person known to speak with Mechelle Gandy before her death was a babysitter, Lana Murphy who spoke with Ms. Gandy by phone on the night of March 20, 2011 at 9:02pm.  During the conversation it was apparent to Ms. Murphy that no one else was present at Ms. Gandy's home nor was anyone expected.  (RR, XVI, 85-95).  Miles Thayer who served with Appellant in the Air Force Reserve said that Appellant told him he was a suspect in a murder case and that at the time of the murder he was at home doing laundry.  (RR. XVI, 130-134).

Law enforcement examined various electronic devices in a search for evidence.  After Appellant consented to a search of his IPhone, Detective Weber attempted to download the phone with forensic software which download kept

failing. Detective Weber resorted to examining the IPhone without forensic software and instead of retaining the IPhone, it was returned to Appellant following Appellant's interview. (RR. XVI, 186-193).

FBI agent Sedwick assisted in analyzing cellphone records belonging to Appellant and Mechelle Gandy. Agent Sedwick also analyzed cell site location information (CSLI) to attempt to determine Appellant's location at various times near the time of the offense. Agent Sedwick's testimony concerning the locations of Appellant's phone was based on phone records obtained from AT&T pursuant to a court order and not based on a probable cause search warrant. (CR. I, 116-130). Agent Sedwick was able to determine that Appellant's IPhone was in the vicinity of the fire scene at times near the time of the fire. However, Agent Sedwick conceded that he could not say that Appellant or his phone were ever at Mechelle Gandy's apartment the scene of the fire and murders. (RR. XVII, 92-93, 142, SX 297).

The Texas Attorney General's Office filed a paternity lawsuit. The lawsuit was determined not to have been served on Appellant as the Constable's office made three failed attempts at service. As a result, there was never any hearing scheduled for this lawsuit, nor any orders for Appellant to provide his DNA sample to determine paternity. (RR. XVIII, 29-31). Defense investigator Paula Greene testified that there was a longstanding pool hall called Rack Daddy's in an area

where Appellant described being at a time near the time of the fire. This location was consistent with the CSLI information obtained from AT&T records. (RR. XVIII, 42).

Appellant had been in a volatile relationship with Rebecca Raudry and they had a child together.  (RR,XI,. 20).  Appellant denied to Ms. Raudry having a relationship with Mechelle Gandy or that Asher was his child.  Rebecca became convinced Appellant lied about the relationship when she was sent a photograph of Appellant's genitals by Mechelle Gandy.  (RR. X, 32-38, 52).

## **POINT OF ERROR NUMBER ONE:**

### THE EVIDENCE WAS LEGALLY INSUFFICIENT
### TO SUPPORT A FINDING OF GUILT

**Facts:**

Supplementing as well as summarizing the above-referenced "Statement of Facts" the following list of evidence presented at trial should assist in analyzing this sufficiency of the evidence issue.

State's proffered evidence inferring guilt:

Appellant lied about possibly fathering Asher with Mechelle Gandy (RR. X, 87; XI, 32; XI, 209).

Appellant lied to Rebecca about relationship with Mechelle Gandy (RR. XI, 52).

8

Appellant lied to friends about relationship with Mechelle Gandy (RR. XI, 209; XVI, 110-112).

Appellant requested friend to take paternity test for him (RR. XVI, 77-78).

Appellant lied about his whereabouts (RR. XVI, 133-134).

Appellant lied about his communications with Mechelle Gandy.

Appellant lied about not having a car in a text to Mechelle Gandy (XVII, 133).

Appellant lied about having eczema (RR. XI, 25-27, 220-221, XIII, 137; XIV 91-92; XVI, 105-106).

Appellant had scratches on his body  (RR. XIV, 92, SX 222, 223, 229, 230).

Appellant's vehicle smelled of gasoline (RR. XII, 65).

Evidence inferring lack of guilt:

No murder weapon found (Mechelle Gandy was stabbed).

No evidence supporting theory that Appellant was ordered to give DNA sample. (RR. XIX, 29-31).

Forensic testing was negative for gasoline in Appellant's vehicle. (RR. XII, 129).

Forensic expert says not to go by smell regarding gasoline (RR. XII, 130).

No evidence Appellant knew where Mechelle Gandy lived (RR. XVII, 131).

Affirmative evidence from the victim, that Appellant didn't know where she lived. (RR. XVII, 131)

No evidence Appellant was ever at Mechelle Gandy's apartment
FBI phone forensic analyst cannot say Appellant's phone was ever at Mechelle Gandy's apartment. (RR. XVII, 142).

No fingerprints or DNA placing Appellant at the scene. (RR. XIII, 126, 133-135; XV, 31-32, 35; XIX, 54-138).

No victim evidence in Appellant's vehicle including blood that would place Appellant at scene.

No evidence at Appellant's apartment connecting him with offense. (RR. VI, 170-177).

Appellant denied offense to police investigators. (RR. XIV, 155-156; SX 5 & 6).

Appellant cooperated and consented to searches to assist investigators. (RR. XII, 206, 209-215).

Police searched all area gas stations and found no evidence of Appellant buying gasoline. (RR. XV, 69-70)
Foreign hairs on the body of Mechelle Gandy (RR. XVIII, 27).

No DNA material from victim's body connecting Appellant to offense e.g. fingernails.  (RR. XIII, 96; XVIII, 8283).


**Argument and authorities:**

Appellant urges that the evidence is legally insufficient to support the jury's guilty verdict.   In reviewing legal sufficiency of the evidence, the Court must examine all the evidence in the light most favorable to the verdict to determine whether the jury could rationally find the essential elements of capital murder beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Brooks

v. State, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010). In a sufficiency review, circumstantial evidence is just as probative as direct evidence, and circumstantial evidence, standing alone can be sufficient to establish guilt. Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In the instant case, there was no physical evidence to connect Appellant to the murder or the murder scene. Unlike the facts in Clayton *Id.* there were no fingerprints. There was no DNA either at the murder scene that belonged to Appellant, nor from the murder scene in Appellant's vehicle or his person. Notably there was no blood from the victim found in the vehicle Appellant was driving despite substantial bleeding by the victim at the crime scene. There was no eyewitness that could provide a description of the actor other than testimony that a person was in the area that was an extremely generic description as a human being of unknown gender, race or other description. No weapon associated with the offense was connected to Appellant. While there was evidence that the fire was started with an accelerant, namely gasoline, the State's forensic examination failed to support that there was gasoline in Appellant's vehicle. Law enforcement agents described "smelling" gasoline in the subject vehicle. The forensic fire evidence expert testified that using smell is not a "reliable source." The expert went on to say that "the hydrocarbon that you are actually smelling is not gasoline, just something that smells similar to gasoline." (RR. XII, 129-130).

A fact tending toward the State's case is the fact that Appellant had a number of scratches on his body shortly after the murders. Appellant explained these scratches as the consequence of his suffering from eczema. These statements about the scratches coming from his eczema established to be false through the testimony of several friends and acquaintances. These facts should also be considered with the forensic examination of victim Mechelle Gandy whose fingernails were examined for the presence of DNA. Had Mechelle Gandy engaged in defensive actions in scratching her attacker it could well be expected that the assailant's DNA would be left under her nails. No such evidence was recovered. Additionally, words from the victim Mechelle Gandy's text to Appellant affirmatively demonstrated that Appellant did not know the address where the victim lived. (RR. XVII, 131).

What remains is a possible motive and a series of false statements by Appellant. The State's theory of motive was that Appellant feared that he would be determined to be the biological father of the child Asher and would thus be responsible for child support for the child. The State's theory was that Appellant was ordered to submit to a DNA paternity test where this determination would be made. Fearing the outcome of this ordered test, Appellant was motivated to kill Asher and his mother Mechelle and thus committed the instant offense. Contradicting this theory was evidence that Appellant was never served with the

underlying lawsuit for paternity that was filed by the Attorney General of Texas and the fact that no order or directive from the Court was scheduled or issued for him to submit to a DNA paternity test. In Appellant's interviews with detectives, he readily admitted his likely parentage of Asher and appears unconcerned about the potential determination that he is the father. (SX 5 and 6).

While efforts at deceit and concealment are frequently indications of guilt in the context of the insanity defense *e.g.* <u>Graham v. State</u>, 566 S.W.2d 941 (Tex. Crim. App. 1978), they should not replace substantive evidence demonstrating guilt. Efforts at concealment in the insanity defense context show a recognition of the wrongfulness of a defendant's acts directly contradicting one of the essential elements of the insanity defense. Deceit here may provide suspicion, but it does nothing to place Appellant at the scene of the offense or committing any of the acts that caused the death of the victims beyond that suspicion and speculation. Many of Appellant's false statements were to third parties denying paternity or the existence of an intimate relationship and had nothing to do with the circumstances surrounding the offense. While "some" inference may be warranted regarding false statements, the cumulative total of these inferences does not replace the complete absence of affirmative evidence establishing Appellant's guilt. The cumulative total of the inferences that can be drawn from the false statements rises no higher than to create a suspicion. While juries are permitted to draw multiple

reasonable inferences as long as each inference is supported by evidence at trial, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. <u>Winfrey v. State</u>, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013).   If the evidence presented at trial raises "only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict]." <u>Winfrey v. State</u>, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010).  In a circumstantial case it is unnecessary for every fact to point directly and independently to a defendant's guilt; it is enough if the finding is warranted by the cumulative force of all of the incriminating circumstances.  <u>Temple v. State</u>, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013); <u>Stobaugh v. State</u>, 421 S.W.3d 787, 862 (Tex. App. – Fort Worth 2014)  *pet. ref'd.*  The cumulative force of all the circumstances in this case fail to support the jury's verdict.  The conviction should be reversed and a judgment of acquittal ordered.

## POINT OF ERROR NUMBER TWO:

THE TRIAL COURT ERRED IN PERMITTING
ADMISSION OF PHONE RECORDS OBTAINED IN
VIOLATION OF DEFENDANT'S RIGHTS TO BE FREE FROM
UNREASONABLE SEARCH AND SEIZURE AS PROVIDED IN
THE 4TH AND 14TH AMENDMENTS OF THE UNITED STATES
CONSTITUTION, ARTICLE 1 SECTION 9 OF THE TEXAS
CONSTITUTION AND ARTICLE 38.23 TEXAS CODE OF
CRIMINAL PROCEDURE

**Argument and Authorities:**

Appellant at trial filed a First Amended Motion to Suppress Evidence (CR. I, 113-130).  The motion was heard in a pretrial hearing. (RR. 4-29).  The motion centered on orders issued by two Tarrant County District Courts directed to AT&T to provide the State with records pertaining to Appellant's cellular telephone.  The records requested and of which Appellant complained were the records of AT&T that would include cellular tower locations, maps and other data that would disclose the location of Appellant's cellular telephone at various times (CSLI or cell site location information).  In one of the Court orders, the request was for a time period from March 1, 2011 through March 22, 2011.  (CR. I, 128-129).  The orders that were issued were the result of Applications filed by the State pursuant to 18 U.S.C. § 2703(d) and Texas Code of Criminal Procedure 18.21.  (CR. I, 116-119, 123-127).  It should be noted that none of the applications or orders pertained to the contents of any cellular phone communications.

Appellant urges as he did in the trial court that the Court orders to AT&T to provide these records was in violation of his rights to be secure from unreasonable search and seizure under the 4th and 14th Amendments of the United States Constitution,  Article 1, Section 9 of the Texas Constitution and Article 38.23 Texas Code of Criminal Procedure.  Appellant argues that he had a reasonable expectation of privacy in the cellular phone location data and that this expectation

of privacy required the State to seek such information on the basis of a search warrant premised on probable cause or qualify for an exception to the warrant requirement.

18 U.S.C. § 2703(d) provides:

> A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the government entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.

This standard is less than that required for a search warrant and has been described as "essentially a reasonable suspicion standard." <u>In re Application of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)</u>, 707 F.3d 283, 287 (4th Cir. 2013).

The trial Court after hearing argument of counsel denied Appellant's motion and gave Appellant a running objection to this evidence. (RR. III, 23-28). The State made use of this location evidence during trial to establish with testimony and maps Appellant's locations during times on the day of the offense. This evidence while not placing Appellant at the location of the offense, put Appellant in the vicinity of the offense during times near its commission.

The phone records were admitted in evidence and further explained with additional exhibits and maps. FBI Special Agent Mark Sedwick presented

testimony based on the cellular phone records obtained in the referenced orders. At each step of the admission of the evidence and consistent with the granted running objection, Appellant renewed his objections which were overruled. (RR. XVI, 125-126; SX 295; RR. XVII, 92-94, 126; SX 297; SX 298, 299, 300).

The issue presented is the subject of developing case law. Appellate Courts throughout the United States have split on whether the orders to produce these records is Constitutionally permissible. At trial, Appellant cited State v. Earls, 70 A.3d 630 (New Jersey Sup. Ct. 2013)[2]. In Earls the Supreme Court of New Jersey held that there is a reasonable expectation of privacy in the location of a person's cell phone and law enforcement is required to obtain a search warrant to obtain such location data. Id. at 588. The United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…" The 6th Amendment of the U.S. Constitution. Article 1, Section 9 of the Texas Constitution provides "The people shall be secure in their persons, houses, papers and possessions, from all unreasonable searches, and no warrant to search *any* place, or to seize any person or thing, shall issue… without probable cause, supported by oath or affirmation." To determine whether a violation of the Fourth Amendment has occurred, cases

---

[2]    The trial Court noted that the New Jersey Constitution offers greater protection than the 4th Amendment. Appellant argues that likewise, Article 1, Section 9 of the Texas Constitution provides greater protection than the 4th Amendment of the United States Constitution.    "If anything, Article 1, § 9 recognizes that same basic protection, but in terms more imperative." Richardson v. State, 865 S.W.2d 944, 948 (Tex. Crim. App. 1993).

have focused on whether the government had violated an individual's reasonable expectation of privacy.  Kyllo v. United States, 533 U.S. 27, 31-33 (2001), Katz v. United States, 389 U.S. 347, 360 (1967).

In United States v. Graham, 2015 WL 4637931 (4th Cir. Aug. 5, 2015)[3] the Court held that the government's warrantless procurement of cell phone location information recorded by the defendant's cell phone service provider violated the 4th Amendment of the United States Constitution as an unreasonable search.  Id. at 6. The Court went on to say, "We hold that the government conducts a search under the Fourth Amendment when it obtains and inspects a cell phone user's historical CSLI for an extended period of time.[4]"  Id. at 8.  The Court in Graham, dispensed with the government's argument that there was no reasonable expectation of privacy.

The Supreme Court considered long-term electronic location surveillance in United States v. Jones, 565 U.S. ____, 132 S.Ct. 945 (2012).  While Jones concerned a GPS device placed on the defendant's vehicle over an extended period of time, five Justices agreed that "longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy. Id. at 955.  The privacy

---

[3]     Case was affirmed based on application of Federal good faith exception.

[4]     In Graham one of the government applications sought records for a 221 day time period. In In re Application of U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel., 849 F. Supp.2d 113, 120 (E.D.N.Y. 2011) the request was for a period of 30 days. In Commonwealth v. Augustine, 4 N.E.3d 846, 854 (Mass. 2014) the request was for a two-week period.  In the instant case in one of the Applications, the request was for a 21 day period. (CR. I, 128).

interests affected by long-term GPS monitoring apply with equal or greater force to historical CSLI for an extended time period.  <u>Commonwealth v. Augustine</u>, 4 N.E. 3d 846, 861 (Mass. 2014).  "Citizens of this country largely expect the freedom to move about in relative anonymity without the government keeping an individualized, turn-by-turn itinerary of our comings and goings."  Renee McDonald Hutchins, *Tied Up in Knotts? GPS Technology and the Fourth Amendment*, 55 UCLA L.Rev. 409, 455 (2007).

Inspection of historical CSLI may provide even more private information than the GPS device challenged in <u>Jones</u> as the GPS device is limited to the movement of an automobile whereas a cell phone seldom leaves it's owner's presence.  Unlike GPS, historical CSLI data can permit the government to track a person's movements between public and private spaces.  Other Courts that have recognized an expectation of privacy in long-term CSLI include <u>Tracey v. State</u>, 152 So.3d 504, 526 (Fla. 2014);   <u>In re Application of U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.</u>, 849 F.Supp.2d 526, 539 (Dist. Ct. Md. 2011); <u>In re Application of U.S. for an Order Authorizing the Release of Historical Cell-Cite Info.</u>, 809 F.Supp2d 113, 120 (E.D.N.Y 2011).

It is often argued in support of the warrantless method of obtaining CSLI that since the records are created and maintained by a non-government third party

(third-party doctrine) then a person has no expectation of privacy in what amount to business records.  <u>United States v. Miller</u>, 425 U.S. 435, 442 (1976).  The Court in <u>Graham</u> said "It is clear to us … that cell phone users do not voluntarily convey their CSLI to their service providers."  The Court found the third-party doctrine inapplicable.  <u>Id</u>. at 14.  The Court said that CSLI information is not voluntarily conveyed to the third party and that it is the voluntary conveyance—not the mere fact that the information winds up in the hands of a third party's records that demonstrates the assumption of risk of disclosure and thus the lack of any reasonable expectation of privacy.  <u>Id</u>. at 15.  As an example the Court notes that when a call is received by the user who does not answer, the location information is still generated without any affirmative act by the user.  Thus, the user has not voluntarily exposed anything at all.

Appellant argues that cases cited by the State at trial, <u>Barfield v. State</u>, 416 S.W.3d 743 (Tex. App. – Houston [14th] 2013) and <u>In re Application of the United States for Historical Cell Site Data</u>, 724 F.3d 600 (5th Cir. 2013) were wrongly decided.  Those cases rely on the third-party doctrine.  The United States Supreme Court has yet to address this issue which is a by-product of modern technology.  These two cases cited by the State fail to address the "real" expectation of privacy and the involuntary nature of the disclosure as admirably discussed in <u>Graham</u>.  Appellant urges that the CSLI was obtained in violation of his Constitutional rights

under the 4th and 14th Amendments of the United States Constitution, Article 1, Section 9 of the Texas Constitution and Article 38.23 Texas Code of Criminal Procedure. The admission of these records and the testimony from these records that identified Appellant's locations was harmful and thus reversible error.

## POINT OF ERROR NUMBER THREE:

THE TRIAL COURT ERRED IN ALLOWING ADMISSION OF
EXTRANEOUS CONDUCT EVIDENCE THAT WAS
IRRELEVANT AND WHOSE PROBATIVE VALUE
WAS SUBSTANTIALLY OUTWEIGHED BY IT
PREJUDICIAL EFFECT

**Argument and Authorities:**

The State presented evidence from Appellant's coworker Ryan Bridges from Truluck's restaurant that Appellant asked him about acquiring a handgun with a suppressor. (RR. XVI, 33). According to Mr. Bridges, Appellant advised him that he wanted a gun that could not be traced back to him and that he wanted to shoot raccoons. The request was made one or two months before the murders. (RR. XVI, 34). Appellant objected to this evidence as not relevant to the case, pointing out that no firearm or suppressor was used in the offense. The State responded that the evidence shows intent to commit murder. Appellant's objections were based on Texas Rules of Criminal Evidence 401 and 403. (RR. XVI, 41)

Appellant urges that admission of this evidence was not only irrelevant and not related to any facts in the case, but was highly prejudicial substantially

outweighing its nonexistent probative value.  Mr. Bridges was known at work to have been a firearms instructor and was seeking a Federal firearms dealer's license and would be knowledgeable about firearms. He advised that acquisition of such weapons is highly regulated. (RR. XVI, 35).  Mr. Bridges said that Appellant never told him he wanted a weapon to kill anyone. He further testified that buying such a weapon was not illegal if you went through the proper process to do so.  (RR. XVI, 39-40).  There was nothing in the conversation about obtaining the weapon that made any connection to either victim in the case.  The evidence was probative of nothing and thus not relevant.

If extraneous offense evidence is not "relevant" apart from supporting an inference of "character conformity," it is absolutely inadmissible.  Montgomery v. State, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990).  See also Russell v. State, 113 S.W.3d 530 (Tex. App. – Fort Worth 2003) pdr. ref'd.  The evidence suggested poor character and therefore its erroneous admission was harmful.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this Honorable Court reverse this cause and enter a judgment of acquittal for insufficient evidence, or remand the case for a new trial and for such other and further relief to which he may be entitled.

Respectfully submitted,


/s/ Wes Ball
WES BALL
State Bar No. 01643100
4025 Woodland Park Blvd.
Suite 100
Arlington, Texas 76013
Email:  WBnotices@ballhase.com
Telephone: (817)860-5000
Fax No.: (817)860-6645

ATTORNEY FOR APPELLANT




## CERTIFICATE OF SERVICE

On this the 2nd day of September 2015, a true and correct copy of the above and foregoing Appellant's Brief was delivered by the Efile portal to the Post-Conviction Division of the Tarrant County District Attorney's Office and mailed to Appellant.


/s/ Wes Ball
WES BALL
Attorney for Appellant

## **<u>CERTIFICATE OF COMPLIANCE</u>**

In compliance with Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, I certify that the Appellant's Brief was prepared using Microsoft Word, and according to that program's word count function, the document contains 3,017 words.

/s/ Wes Ball
WES BALL
Attorney for Appellant