# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| THOMAS OLIVAS, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-385-P |
| | § | |
| BOBBY LUMPKIN, Director, | § | |
| TDCJ-CID, | § | |
| Respondent. | § | |

## REPLY TO RESPONDENT'S ANSWER TO PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

TO THE HONORABLE UNITED STATES JUDGE FOR THE NORTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION:

Petitioner, Thomas Olivas (Olivas), by and through undersigned counsel, respectfully submits this Reply to Respondent's Answer to Petitioner's Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.

Respectfully submitted.

GOLDSTEIN & ORR

By:*/s/ Aaron M. Diaz*
AARON M. DIAZ
State Bar No. 24108453
JOHN S. GILMORE, III
State Bar No. 24096676
310 S. St. Mary's St.
29th Floor–Tower Life Building
San Antonio, Texas 78205
Telephone: (210) 226-1463

Facsimile: (210) 226-8367
Email: adiazlaw1@gmail.com
Email: johnstuartgilmore@gmail.com

## Jurisdiction

Olivas seeks relief under § 2254(d), as an individual in custody pursuant to a state court conviction that violates the United States Constitution, laws, or treaties. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Specifically, Olivas asserts that he suffered violations of his rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. The challenged conviction arises out of the 372nd District Court in Tarrant County, Texas, which is located within this Court's jurisdiction. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

## Legal Standard of Review

Under 28 U.S.C. § 2254(d), a petitioner seeking relief must demonstrate that adjudication his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70–71 (2003); *Williams*, 529 U.S. at 412–13.

## BACKGROUND

### I.   PROCEDURAL HISTORY

On October 2, 2014, a jury convicted Olivas of capital murder and sentenced him to life in prison without parole.  On appeal, Olivas raised three issues: 1) that the evidence was insufficient to support his conviction, 2) that the trial court erred by allowing the State to introduce cell tower records, and 3) that the trial court erred by allowing the State to introduce extraneous conduct evidence.  The Second Court of Appeals affirmed Olivas's conviction on December 30, 2016.  *Olivas v. State*, 507 S.W.3d 446 (Tex. App.—Fort Worth 2016).

On September 12, 2018, the Texas Court of Criminal Appeals granted Olivas's petition for discretionary review.  *Olivas v. State*, No. PD-0561-17 (Tex. Crim. App. Sept. 12, 2018).  Because the court of appeals did not have the benefit of *Carpenter v. United States*,[1] the Court reversed the lower court to reconsider its holding concerning the cell tower evidence.  *Id*.  On remand, the court of appeals, again, upheld Olivas's conviction.  *Olivas v. State*, No. 02-14-00412-CR, 2020 WL 827144 (Tex. App.—Fort Worth Feb. 20, 2020).  Olivas filed a subsequent petition for discretionary review, which the Court refused on September 16, 2020.  *Olivas v. State*, PD-0336-20 (Tex. Crim. App. Sept. 16, 2020).

---

[1]     *Carpenter v. United States*, 138 S. Ct. 2206 (2018).

Thereafter, Olivas sought post-conviction relief by filing an 11.07 Application for Writ of Habeas Corpus under Texas Code of Criminal Procedure articles 11.07 and 11.073. He raised two claims on habeas: 1) actual innocence and 2) Due Process violations for faulty testimony presented at his trial. The trial court recommended that relief be denied, which the Texas Court of Criminal Appeals ultimately followed on May 4, 2022. This § 2254 Petition followed.

## II.   STATEMENT OF THE CASE

The pertinent facts related to Olivas's claims for post-conviction relief are thoroughly recited in the record filed his state habeas proceedings and before this Court. Nevertheless, Olivas reemphasizes critical facts in response to Respondent's answer.

Arlington police investigators knew that Gandy was dating multiple individuals at the time she was murdered. Gandy's neighbor, Stanley Cantly, described one of those individuals as a white male, about 5'8 with a stocky build, and short blond spiky hair. Investigators later identified that person as Christopher Grant. Law enforcement did not consider Grant to be a suspect. Gandy also had a sexual relationship with Timothy Jopson (Jopson), who admitted to obsessively harassing Gandy when he discovered another male at Gandy's apartment. When investigators initially contacted Jopson about Gandy's death, he was uncooperative

and hostile.  Jopson allowed law enforcement to collect an oral swab, but he did not provide a hair sample.  Despite other potential leads, the Arlington Police Department remained focused on charging Olivas for the crimes.

Investigators collected an oral swab and a hair sample from Olivas. Importantly, none of Olivas's DNA was found on Gandy or in her apartment.  And none of the Gandy's DNA was discovered on Olivas or his belongings.  At Olivas's trial, however, Assistant Tarrant County Medical Examiner Patricia Eddings testified that several foreign hairs were discovered on Gandy's body.  When analyzing the trace evidence, Eddings determined that some of the hairs belonged to Gandy and one hair belonged to an unknown third person—*not* Olivas.  An unknown male's DNA was also found on items in Gandy's apartment.  The DNA evidence was analyzed and excluded Olivas as the contributor.  Because law enforcement focused their investigation on Olivas, the DNA samples were never compared to any other individual.  In short, no physical evidence placed Olivas in Gandy's apartment the night of the incident.  And no one identified Olivas as the person leaving the scene the night of the incident.

In addition, Dr. Shiping Bao was the Tarrant County Deputy Medical examiner who performed the autopsy on Gandy and Asher, but left shortly after performing the autopsies and did not testify at Olivas's trial.  Although Dr. Bao was

available to testify at Olivas's trial, the State never contacted him and did not call him as a witness.  Instead, Ex-Chief Tarrant County Medical Examiner Dr. Nizam Peerwani testified based on Dr. Bao's reports, photos, and investigative findings—despite not personally performing the autopsies.  Olivas's state habeas pleadings contain an affidavit by Dr. Bao that rebuts Dr. Peerwani's trial testimony.

Had Dr. Bao testified at Olivas's trial, Olivas's defense counsel could have questioned him about the validity of Gandy's and Asher's autopsies, considering the inaccuracies in other autopsies he performed.  Yet, the State allowed Dr. Peerwani to testify based on Dr. Bao's reports, while knowing Dr. Bao's prior examinations were scrutinized.  This left the jury with a false impression about the trustworthiness of the State's evidence against Olivas.

The lack of DNA evidence placing Olivas at the crime scene, coupled with the State's decision to call Dr. Peerwani rather than Dr. Bao, allowed the jury to convict Olivas on faulty evidence.  Therefore, Olivas respectfully asks that his request for relief on both claims be granted.

## RESPONSE

**I.   OLIVAS'S ACTUAL INNOCENCE CLAIM IS COGNIZABLE IN A FEDERAL WRIT OF HABEAS CORPUS.**

Relying on *Herrera v. Collins*, Respondent contends that Olivas's actual innocence claim is not a federally cognizable claim. (ECF 15 at 5). However, in *Herrera*, the Supreme Court addressed the failure to recognize a federal actual innocence claim as an embarrassing truth. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Even more, federal habeas corpus jurisprudence does not "cast[] a blind eye towards innocence." *Id.* at 404. The *Herrera* Court acknowledged that in capital cases, "a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417.

More recently, the Supreme Court remanded a writ of habeas corpus to the district court for a hearing and determination. *See In re Davis*, 557 U.S. 952, 131 S. Ct. 1 (2009). Notably, *In re Davis* did not present a safe harbor case based on an innocence claim to support a successive writ—thereby acknowledging that an actual innocence claim is federally cognizable. *Id.* In doing so, the majority rejected the argument that an actually innocent person is foreclosed relief even when in possession of "new evidence conclusively and definitively proving, beyond any scintilla of doubt, that he is an innocent man." *Id.* at 2 (Stevens, J., concurring).

Respondent further argues that Olivas's new evidence is not actually newly discovered. (ECF 15 at 6). Although the DNA evidence was presented at trial, the methods used to examine the DNA have since been discredited. For example, the State analyzed the foreign hairs founds on Gandy using a comparison microscope. This technique only allowed the analyst to compare the trace evidence to Gandy's and Olivas's hair samples. As Respondent correctly recognizes, Olivas was excluded as a contributor of every trace sample recovered as evidence. (ECF 15 at 6). If the trace evidence was examined using newer, more reliable methods, such as mitochondrial DNA testing, the results would have revealed more identifiable characteristics of the contributor.

Olivas was also excluded as a contributor of the male DNA found on Gandy's body. After Olivas's trial, the FBI notified all CODIS laboratories about the discrepancies in DNA mixture interpretation. These discrepancies were unknown at the time of Olivas's trial and should constitute new evidence directly affecting the reliability of the results presented during Olivas's trial.

Also, as argued below, the misconduct within the Tarrant County Medical Examiner's Office was unknown to Olivas at the time of his trial. And the extent of TCMEO's improper practices continues to evolve as new information becomes publicly available. *See generally* Static, *Cutting In*, FORT WORTH WEEKLY (July 2,

2022), https://www.fwweekly.com/2022/07/02/cutting-in-2/.

The State court was incorrect to deny Olivas's request for habeas relief because the evidence supports Olivas's claim that he is actually innocent. This Court should exercise its authority to right that wrong, and grant relief.

## II.    OLIVAS'S RIGHT TO DUE PROCESS WAS VIOLATED.

The Due Process Clause of the Fourteenth Amendment "forbids the State from knowingly using perjured testimony." *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000) (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972)). False testimony may significantly impact the jury and the outcome of a trial. *Napue v. Illinois*, 360 U.S. 264, 271 (1959). The principle that prosecutors may not knowingly use false testimony to obtain a tainted conviction does not cease to apply merely because the false testimony goes only to the credibility of the witness. *Id.* at 269. An expert witness' reliance on evidence is barred if the witness is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation. *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009).

Due process is implicated when a prosecutor introduces or allows false or perjured testimony, and the prosecutor actually knows or believes that testimony is false or perjured; it is enough that testimony is challenged by another witness or is

inconsistent with prior statements. *United States v. Brown*, 634 F.2d 819, 824 (5th Cir. 1981). In considering whether evidence is false, courts determine whether the testimony taken as a whole, gives the jury a "false impression." *Alcorta v. Texas*, 355 U.S. 28, 31 (1957) (holding due process was violated where witness gave the jury a "false impression" by testifying that he did not "love" the victim and had not been on any "dates" with the victim, but omitted the fact that he had had sexual intercourse with the victim on several recent occasions).

Respondent argues that Olivas cannot state with any specificity which evidence was false, and why. (ECF 15 at 8). However, as previously noted, Dr. Bao performed the autopsies on Gandy and her son, Asher. Prior to Olivas's trial, Dr. Bao ended his employment with Tarrant County for undisclosed reasons. Though the State could have called Dr. Bao to testify about his autopsy reports, the State instead called Ex-Chief Medical Examiner Dr. Peerwani to opine on two reports he did not create. Dr. Peerwani testified that he did not perform either autopsy but relied entirely on Dr. Bao's work product.

Dr. Bao's report stated Asher's cause of death was due to thermal injuries. Although Dr. Peerwani initially testified that no evidence suggested an act of violence as a cause of death for Asher, and that there was no way to conclude the manner of death for the child, Dr. Peerwani opined at trial that the absence of soot

in the child's trachea indicated he was not breathing when he caught fire. This allowed the State to suggest Asher was killed prior to the fire engulfing the apartment, even though the autopsy report determined his death occurred from thermal injury.

The autopsy report was in the State's possession throughout the entirety of the investigation. Moreover, Dr. Bao was available to testify at Olivas's trial to explain his findings, yet the State never contacted him. The State had actual knowledge that the Dr. Peerwani's testimony was inaccurate with regard to the autopsies completed by Dr. Bao. *See Brown*, 634 F.2d at 824. Allowing Dr. Peerwani to opine in contradiction to the conclusive report gave the jury a false impression as to the cause of Asher's death. *See Alcorta* 355 U.S. at 31. Because the State had actual knowledge of the falsity in Dr. Peerwani's testimony, the State violated Olivas's due process rights. *See Knox*, 224 F.3d at 477 (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972)). Therefore, Olivas's due process claim is substantiated, and this Court should order a hearing to resolve this issue.

## CONCLUSION & PRAYER

For the above reasons, Olivas respectfully prays that this Court order a hearing in this cause, and grant his request to vacate his sentence. Alternatively, Olivas requests that this Court reverse his conviction and order a new trial, or any relief to

which he may be entitled.

Respectfully submitted.

**GOLDSTEIN & ORR**

By: */s/ Aaron M. Diaz*
AARON M. DIAZ
State Bar No. 24108453
JOHN S. GILMORE, III
State Bar No. 24096676
310 S. St. Mary's St.
29th Floor–Tower Life Building
San Antonio, Texas 78205
Telephone: (210) 226-1463
Facsimile: (210) 226-8367
Email: adiazlaw1@gmail.com
Email: johnstuartgilmore@gmail.com

**Attorneys for Petitioner,
Thomas Olivas**

## CERTIFICATE OF SERVICE

I certify that on October 3, 2022, Petitioner's Response was electronically filed with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case-filing system of the Court.  Petitioner's Response was electronically served to the following attorney of record for the Respondent:

Rhett Bartlett
Assistant Attorney General
State Bar No. 24128468

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 936-1400
Facsimile: (512) 936-1280

By: */s/ Aaron M. Diaz*
AARON M. DIAZ